

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-6-2009

# Howard Motley v. Alphonso Jackson

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1712

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Howard Motley v. Alphonso Jackson" (2009). *2009 Decisions*. Paper 1582.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1582

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1712
_____

HOWARD G. MOTLEY,

Appellant

v.

SHAUN DONOVAN,* Secretary of
the Department of Housing and Urban Development

*Amended pursuant to Fed. R. App. P. 43(c)(2)
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 05-CV-06164)
District Judge:  Honorable Legrome D. Davis

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 26, 2009

Before: BARRY, SMITH and GARTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed: April 6, 2009 )

_____

OPINION
_____

PER CURIAM

    Howard Motley appeals from the order of the United States District Court for the

Eastern District of Pennsylvania granting the defendant's motion for summary judgment in his civil action. We will affirm.

Because the parties are familiar with the history and facts of the case, and because the District Court's memorandum contains a detailed account, we will recount the background in summary fashion. Motley, an African American male, had been employed by the Department of Housing and Urban Development (HUD) since September 1980. In December 1999, HUD advertised Community Builder positions under two vacancy announcements: 00-MSH-2000-0002z, which was open to all qualified career and career conditional federal employees; and 00-DEU-2000-0002z, which was open to all qualified applicants regardless of federal work experience. Motley applied for Community Builder vacancies at the GS-14 level[1] in Camden, New Jersey; Philadelphia, Pennsylvania; and Wilmington, Delaware under both announcements. Motley was not selected for any of the openings. HUD instead selected three white males and one white female to fill the positions.

Motley filed a formal complaint with the Equal Employment Opportunity Commission, alleging discrimination. Motley prevailed after a hearing, and the Administrative Law Judge's decision was affirmed on appeal in September 2004. However, HUD then sought reconsideration, which the Commission granted on August 26, 2005, finding that HUD had articulated a legitimate, non-discriminatory reason for

---

[1] The announcements also sought applicants for Community Builders at the GS-13 and GS-15 level.

finding that those who were selected for the positions were superior to Motley. Motley then filed a complaint in the District Court. HUD filed a motion for summary judgment, which the District Court granted.[2] This timely appeal followed.

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevey v. Stoup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

---

[2] Motley was represented by counsel when he filed his complaint. A few months later, that attorney withdrew an appearance and a second attorney entered an appearance on behalf of Motley. After HUD filed its motion for summary judgment, the parties apparently reached a settlement agreement, see dkt. #16, but following a status conference, the Court ordered that the matter be restored to the active docket, and granted Motley's counsel's motion to withdraw, see dkt. #21. Motley thereafter proceeded pro se and replied to the summary judgment motion. Motley proceeds pro se on appeal.

As Motley did not submit direct evidence of discriminatory behavior, the District Court appropriately analyzed his discrimination claims under the familiar burden-shifting framework established by McDonnell Douglas v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff challenging an adverse employment decision has the initial burden of establishing a prima facie case of discrimination. See McDonnell Douglas, 411 U.S. at 802. To set forth a prima facie case of disparate treatment a plaintiff must show that he or she: 1) belongs to a protected class; 2) was qualified for the employment benefit he sought, and that 3) nonmembers of the protected class were treated more favorably. See Id.; see also Goosby v. Johnson & Johnson Med., Inc., 228 F.3d 313, 318-19 (3d Cir. 2000). The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the decision. McDonnell Douglas, 411 U.S. at 802. Once that burden is met, the plaintiff must establish by a preponderance of the evidence that the nondiscriminatory reasons articulated by the employer are pretextual. See Jones v. School Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999). To defeat summary judgment, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994). More particularly, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

4

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons.'" Id. at 765 citing Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 531 (3d Cir. 1992).

We conclude that the District Court's analysis and entry of summary judgment on Motley's discrimination claim is fully supported by the record. We agree with the District Court that even assuming that Motley met his prima facie case of showing discrimination against him on account of his race or gender, HUD established legitimate, nondiscriminatory reasons for not selecting Motley. See Fuentes, 32 F.3d at 763 (noting that the employer's burden to articulate a legitimate, nondiscriminatory reason is "relatively light").

HUD produced evidence showing that compared with selectees who submitted recent job performance appraisals,[3] Motley had the lowest rating ("fully successful," as compared to "highly successful" and "outstanding" for the other candidates).[4] HUD also showed that it used a "Candidate Reference Check Questions and Responses" form (CRCQR) and that compared with the selectees, Motley was the only candidate who

---

[3] Applicants for the "DEU" job listing were not required to submit performance appraisals, but those who applied under the "MSH" listing were required to submit a current annual performance appraisal.

[4] Motley notes that a candidate for a GS-15 position who was ultimately selected also had a "fully successful" rating, but we do not find this fact material, as Motley was not applying for a GS-15 position.

received "no" responses to the form's question of whether the evaluator would recommend the candidate for a Community Builder GS-14 position. We further agree that Motley did not meet his burden of showing that these reasons were unworthy of credence. Although Motley disagreed with HUD's decisions, he did not demonstrate that the reasons for the agency's decisions were invidious.

Motley raises three main arguments. First, he argues that there is a genuine issue of material fact regarding whether Frank L. Davis was the only one who chose the candidates to fill the Community Builder positions, as HUD claims. Motley argues that the decision was supposed to be made by a selection panel, and notes that Davis acknowledged in his deposition that the selection panels existed at the time the decisions in question were made. In contrast, HUD's interrogatory responses indicated that there "was no selection panel." Motley thus concludes that the real reasons he was rejected must have been expressed by the selection panel, and that HUD says Davis was the only selecting official in order to cover up the true reasons that Motley was not selected. We agree that there is conflicting information regarding the existence of selection panels. Compare Federal Defendant's Response to Plaintiff's First Request for Interrogatories, Appellant's App., Tab 7 (indicating "no selection panel"), with Deposition of Frank Davis, Appellant's App., Tab 9 at 29-31 (describing role of selection panel). However, we do not find that the issue is "material." Davis indicated in his deposition that he was the sole decision-maker, and that his selections were simply presented to the selection

panel "to make sure . . . that we were following all of the rules and procedures." Deposition of Davis at 30. Davis noted that the selection panel did not raise any question regarding his selections. Id. at 31. Thus, Motley's conclusion that the selection panel articulated other reasons for his rejection is totally unsupported.

Second, Motley argues that because HUD stated in interrogatory responses that "[t]here were no recommending officials" involved in the decision, it could not have relied on the CRCQRs, which contained a question asking whether the evaluator would recommend the candidate for the job. We agree with the District Court that this is a matter of semantics. In its interrogatory responses, HUD was apparently referring to formal recommendation letters. The same interrogatory responses make clear that Davis consulted responses to the CRCQRs in making his decisions.

Third, Motley argues that Diane Johnson, one of the two people who was asked to respond to the CRCQRs in his case, falsely represented herself to be his supervisor, so that she could give him a negative reference and instead advance Christine Soucy, a woman she supervised, who was eventually selected and about whom she gave positive answers to the CRCQRs. However, Johnson did not make the decisions regarding the Community Builder positions; those decisions were made by Davis. Further, persons on Davis' staff decided whom to ask for CRCQR responses; Davis had no input into who would be asked. Thus, there is no inference that Johnson was asked to respond for some invidious reason.

7

After thoroughly reviewing the record, we conclude that the District Court properly determined that Motley did not demonstrate the existence of a genuine issue of material fact with regard to his discrimination claim. Accordingly, we will affirm the judgment of the District Court.