

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-19-2009

# Flax v. State of Delaware

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-2486

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Flax v. State of Delaware" (2009). *2009 Decisions*. Paper 1354.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1354

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 08-2486

———————

WILLIAM C. FLAX,

          Appellant

v.

STATE OF DELAWARE

———————

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-03-cv-00922)
District Judge:  Honorable Gregory M. Sleet

———————

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 19, 2009

Before:  SCIRICA, <u>Chief</u> <u>Judge</u>, CHAGARES and WEIS, <u>Circuit</u> <u>Judges</u>

(Opinion filed: May 19, 2009)

———————

OPINION

———————

PER CURIAM.

     William C. Flax appeals from the order of the United States District Court

for the District of Delaware granting the defendant State of Delaware's motion for

summary judgment in his civil action.  We will affirm.

1

Because the parties are familiar with the history and facts of the case, and because the District Court's memorandum contains a detailed account, we will recount the background in summary fashion. Flax was employed by the State of Delaware, Division of Family Services ("DFS"), which is a part of the Department of Services for Children, Youth and Their Families. He began working for the State in 1997. On February 22, 2001, Flax was injured in a work-related motor vehicle accident. At the time of the accident, he held the position of a master family service specialist. Flax's physician, Charles Esham, M.D., prescribed him out of work and referred him to Craig Sternberg, M.D., for neck and back pain treatment. Six months after the accident, upon the State's request, Flax was examined by Mohammad Kamali, M.D., who opined that Flax was able to return to work with a fifteen pound lifting restriction. Shirley Roberts, DFS regional administrator, notified Flax in October 2001 that his lifting restriction could be accommodated and that Flax should return to work on November 5, 2001. Meanwhile, Dr. Sternberg continued to write notes that Flax was unable to work.

In January 2002, Flax submitted a grievance concerning a pay reduction. A State human resources representative responded by explaining that he had received double pay in error, and the overpayments were thus being deducted from his salary.

On March 26, 2002, Dr. Esham authored a note that Flax could return to work with restrictions and qualifications: no more than six hours of work per day, sedentary work only, no driving, no lifting more than twenty pounds, and the need to take medication and to lie down at times. At an October 2002 hearing before the Industrial

2

Accident Board in connection with his workers' compensation claim, Flax stated that his job duties included visiting families, conducting interviews, transporting children to therapist appointments, and interviewing teachers and other providers; he estimated that such field-work and the use of a vehicle accounted for about seventy-five percent of his time. Roberts discussed Flax's position and his medical restrictions with Candace Charkow, another administrator, and opined that Flax could not perform the essential functions of his job. A few weeks later, in April 2002, Dr. Sternberg opined that Flax could drive for fifteen minutes.

On May 15, 2002, Roberts advised Flax by letter that he had exhausted his no fault and leave benefits and that he was being placed on leave without pay. She further advised him to contact her no later than May 31, 2002 regarding his work status. On May 21, 2002, Dr. Esham certified that Flax was totally disabled from his regular occupation and for any occupation as of the date of the motor vehicle accident, February 22, 2001. Flax was removed from the payroll on May 31, 2002. In June 2002, Flax applied for Social Security Disability benefits, which were granted in July 2002. In a letter dated July 9, 2002, Charkow stated that according to the medical information Flax had submitted, he was unable to perform the essential functions of a master family service specialist due to his inability to drive. However, Flax was offered a temporary non-driving assignment so that he could accrue the length of service requirement to qualify for a disability pension. Flax performed the limited term assignment from July 9 through September 9, 2002. On September 9, 2002, Dr. Esham again noted that Flax had been

3

totally disabled since February 28, 2001. On September 26, 2002, Flax applied for a State employee disability pension, which was granted effective January 1, 2003.

Meanwhile, in June 2002, Flax had submitted another grievance claiming unfair labor practices and discrimination based upon his disability. He sought recovery of sick and vacation time, refund of entitled waiver of premiums, copies of leave policies, and placement on the payroll. The State did not consider it an official grievance, as it should have been handled by the union.

On November 25, 2002, Flax filed a formal charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that he had been subjected to discrimination based on his race, age, and disability. He claimed a white employee was transferred when she became disabled, that he was replaced by a younger social worker, and he was subjected to retaliation for filing a union grievance concerning salary issues based upon discrimination. The charge made no reference to promotions. On July 10, 2003, the EEOC issued a notice that it was dismissing his EEOC charge and informed him of his right to sue.

Flax initiated his lawsuit in District Court in October 2003, alleging employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5. In his amended complaint filed in January 2005, Flax also raised claims under Title I of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, for failure to promote and denial of job opportunities, and under Title V of the ADA, 42 U.S.C. § 12203(a), for retaliation; failure to make reasonable accommodations in violation of

4

42 U.S.C. § 1981a, failure to consider employment of an individual with a disability under the Rehabilitation Act, 29 U.S.C. § 791; unfair labor practices as defined under the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158; and failure to consider his disability income and failure to comply with state laws regarding disability pay under the Consumer Credit Protection Act, 15 U.S.C. §§ 1673 1677. Flax stated that the discrimination occurred at the earliest on May 31, 2002, and at the latest on October 1, 2002. The matter proceeded to discovery. The State filed a motion for summary judgment, and the issues were briefed by both parties.

The District Court granted the motion and entered judgment in favor of the State. The District Court concluded that because Flax's complaint sought damages relief and did not seek prospective injunctive relief, the State was immune from liability under the Eleventh Amendment regarding Flax's claims under title I of the ADA, the Age Discrimination in Employment Act (to the extent that such a claim was raised), and 42 U.S.C. § 1981 (to the extent that such a claim was raised). Also, the District Court concluded that Flax's NLRA claim failed because the State is excluded as an employer under the NLRA and because the District Court lacked subject matter jurisdiction to adjudicate claims under 29 U.S.C. § 158. As for Flax's claim under the Rehabilitation Act, the District Court found that the claim failed because a claim under section 791 cannot be asserted by a State employee. Further, the District Court determined that Flax's claims failed under 42 U.S.C. § 1981a and under the Consumer Credit Protection Act, as section 1981a does not create an independent cause of action and the Consumer Credit

5

Protection Act does not provide for a private cause of action. Regarding the claims of race discrimination under Title VII and retaliation under Title VII and under the ADA, the District Court concluded that Flax made insufficient showings to defeat summary judgment. Flax appeals.[1]

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevy v. Stoup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

Flax's discrimination claims are analyzed under the framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 ( 1973). See Jones v. Sch. Dist. of

_____

[1] Before filing his notice of appeal, Flax filed a motion for reconsideration, which the District Court denied on July 2, 2008. Flax did not appeal from the July 2, 2008 order.

Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999). First, a plaintiff must establish a prima facie case of discrimination by offering sufficient evidence that he is a member of a protected class qualified for his position and that he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination. See id. at 410-11. If the plaintiff makes a prima facie showing, the defendant must provide a legitimate, non-discriminatory reason for the adverse employment action. See id. at 410. If the defendant is able to proffer such a reason, the plaintiff must show that it is a pretext for discrimination. See id.

Upon review of the record, for substantially the same reasons given in the District Court's memorandum opinion, we conclude that the District Court correctly granted the State's motion for summary judgment. We note that Flax does not contest the District Court's conclusions concerning the application of the State's Eleventh Amendment immunity, or concerning his claims under the NLRA, section 791 of the Rehabilitation Act, 42 U.S.C. § 1981a, and the Consumer Credit Protection Act. Because Flax raises no claim of error and the issues are not raised in his opening brief, we deem these issues waived and will not consider them. See F.D.I.C. v. Deglau, 207 F.3d 153, 169-70 (3d Cir. 2000).

Regarding the discrimination claim, we agree with the District Court's conclusion that even assuming arguendo that Flax stated a prima facie case of discrimination, he failed to present evidence that the State's reason for the adverse action was pretextual. To defeat a summary judgment motion, Flax needed to identify "some

7

evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Jones, 198 F.3d at 413 (citations omitted). As the District Court noted, the Appellees introduced evidence that Flax was removed from the payroll on May 31, 2002 because he had not been working due to his injury, he was unable to perform the duties of his position, and he had exhausted his no fault and leave benefits. In fact, Flax stated at his deposition that he had no evidence that he was removed from the payroll because of his race, age, or disability. Flax contends that the State failed to promote him at various times during his employment, such as when a supervisory position became vacant in 1999. Flax also notes that the State has not disproved that he had been afforded equal opportunities to supervisory promotions. As noted by the District Court, any claim based upon a failure to promote was not exhausted in his EEOC charge and was not before the court's consideration. We add that because the State had offered a legitimate reason for removing Flax from the payroll, it was no longer the State's burden to disprove that it had not acted with discriminatory motivation.

Flax also claimed that he suffered adverse employment action in retaliation for having filed the January 2002 union grievance regarding a reduction in salary. To advance a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) he engaged in an activity protected by Title VII; (2) the employer took a "materially adverse" employment action; and (3) a causal connection exists between the employee's

8

protected activity and the adverse employment action. See Moore v. City of Philadelphia, 461 F.3d 331, 340-41 (3d Cir. 2006). The District Court found that, to the extent that Flax intended to bring a Title VII retaliation claim, there was no mention of race discrimination in either the January 2002 grievance complaining of salary reduction or the June 2002 grievance alleging discrimination based upon disability. Accordingly, the District Court concluded that Flax's having filed these grievances unrelated to race discrimination did not constitute protected activity for purposes of a Title VII retaliation claim. We agree and conclude that summary judgment was proper on this claim. See Moore, 461 F.3d at 341 (explaining that "protected activity" in the anti-retaliation provision of Title VII refers to participation in certain Title VII proceedings and to opposition to unlawful discrimination under Title VII).

As for Flax's ADA retaliation claim, the District Court referred to Flax's June 2002 grievance alleging discrimination by the State on account of his disability and applied the same analysis as applied in Title VII retaliation claims. See Krouse v. American Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). The District Court construed Flax's complaint to allege that the State took an adverse action following the June 2002 grievance in not reinstating him to his former position. We agree with the District Court's conclusion that, even assuming that Flax engaged in protected activity, he did not demonstrate that a causal link existed between the grievance and the State's failure to reinstate him. It appears from the record that Flax was unable to perform an essential function of his job and that he was removed from the payroll when he exhausted his

9

benefits, but Flax failed to show that the State's action in not reinstating him was causally related to his June 2002 grievance. In the absence of a <u>prima</u> <u>facie</u> showing of retaliation, the District Court properly granted summary judgment on this claim as well.

Flax suggests that the discovery process was unfairly advantageous to the State in light of their knowledge of and experience with the rules of procedure. We note that the discovery record is extensive in this case, and the District Court thoroughly reviewed and addressed the disputed discovery issues in its August 18, 2006 memorandum order. We discern no reason to disturb the District Court's judgment on the basis of any discovery matter.

We have considered the arguments in Flax's briefs and find them to be unavailing. We will affirm the District Court's judgment.