

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-13-2005

# Podobnik v. US Postal Ser

Precedential or Non-Precedential: Precedential

Docket No. 04-3059

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Podobnik v. US Postal Ser" (2005). *2005 Decisions.* Paper 922.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/922

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-3059

———

PHILIP J. PODOBNIK

Appellant

v.

UNITED STATES POSTAL SERVICE; NATIONAL
RURAL LETTER CARRIERS ASSOCIATION; JOHN E.
POTTER, Postmaster General of the United States

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 01-cv-00192)
District Judge: Honorable Donetta W. Ambrose

———

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 3, 2005

Before: McKEE, VAN ANTWERPEN, and WEIS, <u>Circuit
Judges</u>

(Filed: May 5, 2005)

Mark J. Bushnell, Esq.
Bushnell Law Firm, P.C.
2202 Koppers Building
436 Seventh Avenue
Pittsburgh, Pennsylvania 15219-1818
*Counsel for Appellant*

David C. Belt, Esq.
United States Postal Service, Appellate Division
475 L'Enfant Plaza, SW
Washington, D.C. 20260-1127
*Counsel for Appellee United States Postal Service*

Mark Gisler, Esq.
Peer & Gan LLP
1730 Rhode Island Avenue, NW
Suite 307
Washington, D.C. 20036
*Counsel for Appellee National Rural Letter Carriers'
Association*

---

OPINION OF THE COURT

---

VAN ANTWERPEN, <u>Circuit Judge</u>.

2

Before us is an appeal from the United States District Court for the Western District of Pennsylvania granting summary judgment in favor of Appellees United States Postal Service ("USPS") and National Rural Letter Carrier Association ("NRLCA"). Before the District Court, Philip J. Podobnik ("Appellant") alleged that USPS violated both the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621, et. seq., and the collective bargaining agreement that existed between USPS and NRLCA.[1] He further alleged that NRLCA breached its duty to fairly represent him. Because we conclude that all of Appellant's claims are either untimely or unexhausted, we affirm the Order of the District Court adopting the Report and Recommendation of the Magistrate Judge.

---

[1] Such an allegation alleges a breach of 39 U.S.C. § 1208(b), which is the parallel provision to section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a), addressing specifically claims "for violations of contract between the Postal Service and a labor organization representing Postal Service employees." 29 U.S.C. § 1208(b) (1999). The language of section 1208(b) is nearly identical to that of section 301; hence, other circuits have used cases interpreting section 301 to interpret section 1208(b). See, e.g., Miller v. U.S. Postal Serv., 985 F.2d 9, 10 n.1 (1st Cir. 1993); Columbia Local, Am. Postal Workers Union, AFL-CIO, v. Bolger, 621 F.2d 615, 617 (4th Cir. 1980); Nat. Ass'n of Letter Carriers, AFL-CIO v. U. S. Postal Serv., 590 F.2d 1171, 1176 (D.C. Cir. 1978); Nat. Ass'n of Letter Carriers, AFL-CIO v. Sombrotto, 449 F.2d 915, 918 (2d Cir. 1971).

3

# I. FACTS

Appellant was born on August 17, 1929, and was employed as a rural letter carrier with USPS's Monroeville, Pennsylvania division from March 25, 1969, until his retirement on March 31, 1998. For the entire length of his employment with USPS, Appellant's union representative was NRLCA.[2] As he was a rural carrier, Appellant was not paid for a "traditional" eight-hour work day, as would a city letter carrier. Rather, his compensation was based on the number of pieces of mail he delivered, the mailboxes he served, and the mileage he traveled. Appellant was required to work as long as necessary to complete his daily rounds, which he contends required between 54 and 56 hours per week.

Sometime in 1993, the Monroeville Post Office attempted to adjust Appellant's route downward by transferring approximately 40% of his route to a younger city mail carrier. Because this was a substantial adjustment downward, Appellant's compensation would have been dramatically reduced. He contacted his NRLCA union

---

[2] A collective bargaining agreement between USPS and NRLCA existed both in 1993 and in 1998 (the years in which Appellant alleges age discrimination occurred). Joint Appendix at 953-1078 and 258-354. Appellant acknowledged at deposition that he was in possession of at least one copy of a collective bargaining agreement between USPS and NRLCA, and that he "probably" had looked at it before. However, it is unclear to which agreement he was referring.

4

steward, Helen Malarik, but did not file a grievance at any time. Through Malarik's efforts, Appellant was able to request that the smallest leg of his route be transferred to another rural letter carrier also represented by NRLCA. Ultimately, all parties agreed to the downward adjustment of Appellant's route, which he found to be a "great relief."

On April 22, 1997, Appellant's immediate supervisor followed him on his route and observed him commit three vehicle safety violations: (1) driving in excess of the 45 miles per hour speed limit; (2) changing lanes without using turn signals; and (3) dismounting from his vehicle without shutting off the engine. For these infractions, Appellant was suspended for 14 days and had his driving privileges suspended for 60 days. The next day, Appellant filed a USPS-NRLCA "Joint Step 1 Grievance Form" disputing these charges. NRLCA intervened on Appellant's behalf, and a "Step 2 Grievance Settlement" was reached which reduced his term of suspension to time already served.[3]

---

[3] Article 15 of the collective bargaining agreement requires:

a. Any employee who feels aggrieved must discuss the grievance with the employee's immediate supervisor within fourteen (14) days of the date on which the employee or the Union has learned or may reasonably have been expected to have learned of its cause.

* * *

5

On March 2, 1998, Appellant was again followed and again charged with three safety violations: (1) unnecessary backing up of his vehicle; (2) leaving his vehicle's engine running while it was parked and while he was inside various addresses delivering mail; and (3) leaving his vehicle unlocked and unsecured with mail in it. On March 5, 1998, Appellant went to the Pittsburgh branch of the Equal Employment Opportunity Commission ("EEOC") to file an age discrimination claim. While filling out an EEOC Intake Form, an EEOC representative told him that he would have to pursue any discrimination claim through USPS's Equal Employment Opportunities office. Appellant did not ask for clarification, but claims to have thought that he had to file his complaint directly with his USPS supervisors (which he deemed futile) instead of a USPS employment counselor. In any event, he did not complete an EEOC Intake Form, and did not pursue his claim further with USPS.

On March 10, 1998, Appellant and Malarik had a meeting with his USPS supervisors.[4] At that meeting, the

---

c. If no resolution is reached during such discussion, the supervisor shall promptly annotate a joint Step 1 grievance form, indicating briefly the issue and the date of the initial discussion, which constitutes the Step 1 filing date.

[4] Appellant characterizes this meeting as a "Step 1 Grievance Procedure," while Appellees characterize it as a "pre-disciplinary hearing." Regardless of which term is used, it is uncontested that no joint Step 1 Grievance Form was annotated

supervisors indicated their intent to terminate Appellant, and he was given a letter entitled "Notice of Proposed Removal," proposing to discharge him within 30 days for the vehicle safety violations that had been observed in 1997 and 1998. This notice stated that Appellant had the option, under the collective bargaining agreement, to file a grievance within 14 days. Also during the meeting, USPS offered Appellant the opportunity to retire in lieu of termination, thereby allowing him to keep his pension. On March 31, 1998, Appellant officially retired. He never filed a grievance, nor did he request that NRLCA do so.

On October 11, 2000, Appellant met with his attorney in connection with a Social Security matter. At that meeting, Appellant relayed the situation surrounding his 1993 route reduction and 1998 retirement. At that time he claims that, with the help of his attorney, he became aware that he had viable claims against USPS and NRLCA. He also concedes that, between his retirement and his October 11, 2000, meeting with his attorney, he undertook no independent investigation of his case and did not learn any new facts. On October 12, 2000, Appellant filed a document with the EEOC entitled "Intent to Sue Pursuant to 29 U.S.C. § 633a(d)."

On January 25, 2001, Appellant filed a Complaint in United States District Court against USPS and NRLCA, alleging, *inter alia*, various state law claims against NRLCA. On March 26, 2001, NRLCA sought to dismiss Appellant's

at the conclusion of this meeting, ending the grievance process.

7

claims as preempted under federal law. On October 31, 2001, United States Magistrate Judge Ila Jeanne Sensenich granted, without prejudice, NRLCA's Motion to Dismiss the counts of the Complaint not involving fraud or collusion. On November 16, 2001, Appellant filed a three-count Amended Complaint against USPS and NRLCA. Count I alleged that USPS discriminated against him on the basis of his age when it reduced his mail delivery route in 1993 and notified him in March 1998 that it intended to terminate his employment. Count II alleged that USPS breached its collective-bargaining agreement with the NRLCA when it sought to terminate Appellant's employment. Count III alleged that NRLCA breached its duty of fair representation. The United States District Court for the Western District of Pennsylvania referred the case to Magistrate Judge Sensenich for consideration of all pretrial matters. Appellant, USPS and NRLCA all moved for summary judgment. By Report and Recommendation, the Magistrate Judge denied Appellant's Motion for Summary Judgment and granted USPS and NRLCA's Motion for Summary Judgment, finding that Appellant's claims were time-barred. By Memorandum Order, the District Court adopted the Magistrate's Report and Recommendation. This timely appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The District Court had original jurisdiction over Appellant's Age Discrimination in Employment Act

("ADEA") claim and "hybrid" section 301 claim[5] pursuant to 28 U.S.C. § 1331. Our jurisdiction is grounded in 28 U.S.C. § 1291, as the District Court's grant of Appellees' Motion for Summary Judgment was a final and appealable order.

We review the District Court's grant of summary judgment in favor of Appellees *de novo*. Blair v. Scott Specialty Gases, 283 F.3d 595, 602-03 (3d Cir. 2002); Torres v. McLaughlin, 163 F.3d 169, 170 (3d. Cir. 1998). When reviewing the propriety of a grant of summary judgment, we apply the same test a district court should have applied. Bucks County Dept. of Mental Health/Mental Retardation v. Pennsylvania, 379 F.3d 61, 65 (3d Cir. 2004); Morton Intern., Inc. v. A.E. Staley Mfg. Co., 343 F.3d 669, 679 (3d Cir. 2003); Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996). That is, a grant of summary judgment is appropriate only where the moving party has established that there is no genuine dispute of material fact, and "the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Emory v. AstraZeneca Pharm. LP, 401 F.3d 174, 179 (3d Cir. 2005). Where the defendant is the moving party, the initial

---

[5] "A hybrid section 301 action is one in which a union member sues his or her employer for breaching its contractual obligations under the collective bargaining agreement and the union for breaching the duty of fair representation." Beidleman v. Stroh Brewery Co., 182 F.3d 225, 236 (3d Cir. 1999) (citing DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 164-165 (1983)) (internal quotations marks omitted).

burden is on the defendant to show that the plaintiff has failed to establish one or more essential elements to her case. See Celotex Corp., 477 U.S. at 323-24. On a motion for summary judgment, a district court must view the facts in the light most favorable to the non-moving party and must make all reasonable inferences in that party's favor. Marzano v. Computer Sci. Corp., 91 F.3d 497, 501 (3d Cir. 1996) (citing Armbruster v. Unisys Corp., 32 F.3d 768, 777 (3d Cir. 1994)).

## III. DISCUSSION

Despite the lengthy record and briefs in this case, the questions before us are relatively narrow. As to Appellant's ADEA claim against USPS, we must determine whether the accrual date was delayed by the discovery rule, or alternatively whether the limitations period was equitably tolled. As to his hybrid section 301 claim against USPS and NRLCA, we must determine whether Appellant's failure to file a grievance with regard to his 1998 retirement in lieu of termination bars his recovery. We shall take each question in turn, remembering that Title VII limitations provisions are part of a body of humanitarian legislation that must be interpreted in a humane and commonsensical manner, so as to prevent unnecessarily harsh results in particular cases. Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

A. Appellant's ADEA Claim

Appellant first claims that his 1993 route reduction and his 1998 retirement in lieu of termination both constitute

10

impermissible age discrimination. "All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in the United States Postal Service and the Postal Rate Commission . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a) (1999). An employee covered by this provision has

> two alternative routes for pursuing a claim of age discrimination. An individual may invoke the EEOC's administrative process and then file a civil action in federal district court if he is not satisfied with his administrative remedies. See 29 U.S.C. § 633a(b) and (c). A federal employee complaining of age discrimination, however, does not have to seek relief from his employing agency or the EEOC at all. He can decide to present the merits of his claim to a federal court in the first instance. See [29 U.S.C.] § 633a(d).

Stevens v. Dep't of Treasury, 500 U.S. 1, 5-6 (1991). If an individual alleging age discrimination has not filed a complaint with the EEOC, he may not file a civil action under section 633a until he has given the EEOC at least thirty-days notice of an intent to file such action. 29 U.S.C. § 633a(d) (1999). This notice must be filed within 180 days of the date when the alleged unlawful practice occurred. Id.

It is undisputed that Appellant submitted an Intent to Sue Letter to the EEOC on October 12, 2000. Because he retired on March 31, 1998, his retirement date is the latest

11

possible date that USPS could have engaged in any discriminatory behavior toward him. Thus, Appellant had until September 27, 1998, to file his Intent to Sue Letter, and his letter of October 12, 2000, was therefore untimely. The District Court concluded as such, and granted summary judgment in favor of USPS. On appeal, Appellant argues both that the discovery rule extended the date on which his injury accrued, and the doctrine of equitable tolling halted the limitations clock, thus making his Intent to Sue Letter timely. As did the District Court, we reject these two arguments.

### 1. Discovery Rule

"As a general rule, the statute of limitations begins to run when the plaintiff's cause of action accrues . . . the accrual date is not the date on which the wrong that injures the plaintiff occurs, but the date on which the plaintiff *discovers* that he or she has been injured." Oshiver, 38 F.3d at 1385 (citing Cada v. Baxter Healthcare Corp., 920 F.2d 446 (7th Cir. 1990)) (emphasis in original). That is not to say that the accrual date is when a plaintiff learns he has been the victim of a legal wrong. Rather, a claim accrues as soon as a potential plaintiff either is aware, or should be aware after a sufficient degree of diligence, of the existence and source of an *actual injury*. Keystone Ins. Co. v. Houghton, 863 F.2d 1125, 1127 (3d Cir. 1988); see also Cada, 920 F.2d at 450. The discovery rule delays the initial running of the statute of limitations, but only until the plaintiff has discovered: (1) that he or she has been injured; and (2) that this injury has been caused by another party's conduct. New Castle County v. Halliburton NUS Corp., 111 F.3d 1116, 1124 (3d Cir. 1997).

12

Thus, the question is on what date did Appellant discover that he had suffered an actual injury.

While we understand Appellant to be citing both his 1993 route reduction and his 1998 retirement as instances of age discrimination, we shall dispense with both concurrently. Appellant had actual knowledge of his route reduction immediately, since he participated in and agreed to the reduction. Furthermore, he had actual knowledge of USPS's intent to terminate him on March 10, 1998.[6] Appellant contends that USPS's 1993 route reduction and 1998 intent to terminate or retire him was on account of his age, that this was not apparent to him until October 11, 2000 (the day he met with his attorney), and therefore the limitations period did not begin to run until then. Specifically, he contends that he "did not know he had a possible injury until then." Brief of Appellant at 38. We read this as meaning that Appellant did not know he had a possible *legal* injury resulting from the 1993 or 1998 actions until after meeting with his attorney. However, the discovery rule is concerned with knowledge of *actual* injury, not legal injury.

---

[6] While Appellant has not alleged that USPS engaged in a broad pattern and practice of age discrimination with regard to forced retirement, we have previously held that an early retirement program designed to force employees who reach a senior age to leave or face significant pressure to resign or retire might itself create an inference of age discrimination. Sempier v. Johnson & Higgins, 45 F.3d 724, 732 (3d Cir. 1995).

13

Appellant does not claim he was unaware that USPS reduced his route in 1993 or that he was unaware he had been served with a Notice of Proposed Removal on March 10, 1998. These are the only dates on which any alleged injury occurred. Therefore, the latest date on which Appellant's claim could have possibly accrued was March 31, 1998, his last day of employment.[7] The discovery rule does not excuse his failure to file his Intent To Sue Letter more than two years after the 180-day limitations period had expired. Were we to extend the reach of the discovery rule to delay accrual until a plaintiff learned that a legal injury had occurred, as Appellant requests, a statute of limitations would become effectively meaningless, as a plaintiff could, through ignorance or fraud, bring an age discrimination claim at any point in his lifetime, regardless of how long ago the underlying acts had occurred. We decline this invitation, and conclude that the discovery rule does not save Appellant's untimely ADEA claim.

### 2. Equitable Tolling

Because the time limitations set forth in Title VII are not jurisdictional, they may be modified by equitable concerns, such as tolling. Oshiver, 38 F.3d at 1387 (citing Hart v. J.T. Baker Chem. Co., 598 F.2d 829, 831 (3d Cir. 1979)). The doctrine of equitable tolling stops a statute of limitations period from running after a claim has accrued, id.,

---

[7] We note that this is a generous date, since it is quite clear to us that Appellant was aware of each of the employment decisions *as they happened*.

14

but should be applied "sparingly." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002); see also Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) ("We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights."). Appellant bears the burden of proving that the equitable tolling doctrine applies here. Courtney v. La Salle Univ., 124 F.3d 499, 505 (3d Cir. 1997). There are three principal situations in which equitable tolling is appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum. Oshiver, 38 F.3d at 1387 (citing Sch. Dist. of City of Allentown v. Marshall, 657 F.2d 16, 19-20 (3d Cir. 1981)). Appellant makes four arguments in support of his contention that equitable tolling is appropriate here. He claims that (1) he was fooled into believing that his route was reduced because he was overworked, and that the safety violations he had committed were the basis for his forced retirement; (2) he was misled by the advice of an employee of the EEOC Pittsburgh office; (3) he timely filed a claim with the EEOC in Pittsburgh; and (4) his local USPS office failed to post an EEOC notice as required by law. Our review leads us to agree with the District Court that there is no basis to equitably toll the limitations period of Appellant's ADEA claim, which we have already concluded accrued no later than March 31, 1998.

15

Moving to his first argument, we conclude, even assuming Appellant's 1993 route reduction and his 1998 retirement were pretext for age discrimination, his noncompliance with the 180-day statute of limitations period was not the result of his being misled by USPS. We find principal support for our conclusion in Appellant's own words. With regard to his 1993 route reduction, Appellant stated at deposition that he first suspected that this action was caused by age discrimination while he "was in the service." Joint Appendix at 378. Reading this statement as generously as possible (since Appellant was unable at deposition to narrow the time frame to any degree), this means Appellant suspected his age played an unlawful part in his route reduction between 1993, and March 31, 1998. Giving Appellant every benefit of the doubt, this means that Appellant was not deceived into believing his route reduction was the result of being overlooked as late as March 31, 1998. Since Appellant took no action with regard to the 1993 reduction within 180 days of his retirement, tolling cannot excuse his untimely complaint. Appellant's tolling argument with regard to his forced retirement fares little better. When asked why he went to the Pittsburgh EEOC office on March 5, 1998, he replied:

> The reason I went there was I felt that I was discriminated upon because of my age and that this EEOC was an organization set up by our government to mitigate or make easier or harder for employers to get rid of you because of age, and if I could prove that that was the case, I could go back to work.

16

Id. at 434.  Appellant cannot realistically argue that he was misled to believe that the safety infractions he committed were the basis for his forced retirement when it is undisputed that he went to the EEOC office three days later to complain that these infractions were pretext for age discrimination. Regardless of whether the safety infractions were in fact pretext, Appellant clearly was not deceived.[8]

Turning to his second argument, Appellant claims that the EEOC misled him by telling him to file his discrimination complaint with "the Post Office."  Appellant claims he began filling out an EEOC complaint, but was stopped and instructed to file with USPS instead.  Even if we were to ignore the fact that Appellant's Complaint seems to indicate he was given correct advice, see Joint Appendix at 21 (stating that the EEOC "told Plaintiff that he had to pursue his claim *through Defendant USPS' agency EEO*" (emphasis added)), any errant advice Appellant may have received from an EEOC employee did not rise to the level of an "extraordinary" circumstance justifying tolling of the limitations period.  We have previously noted that "running throughout the equitable estoppel cases is the obligation of the plaintiff to exercise due diligence to preserve his or her claim."  Robinson v. Dalton, 107 F.3d 1018, 1023 (3d Cir. 1997) (holding that "one phone conversation with an EEO counselor [where erroneous advice was given] does not rise to the level of being prevented in an

_____

[8] We need not make any judgment as to whether the route reduction or the forced retirement were accomplished by actual fraud on the part of USPS.

17

'extraordinary way' by the EEOC from asserting [one's] rights"). There is nothing in the record to indicate that, following this interaction with the Pittsburgh EEOC office, Appellant further pressed his claim in any forum until October 2000. Appellant was under a continuing duty to diligently pursue any claim of age discrimination. Had he done so, a more thorough review of the substance of his interaction with the EEO employee would be required. However, since Appellant took no further action, he cannot benefit from tolling on this point.

Appellant's third argument, that he in fact did timely file a claim with the EEOC on March 5, 1998, seems to belie his first two arguments, as filing an EEOC claim would demonstrate that he believed that he had been the victim of age discrimination, and that he had not been misled by an EEO employee into failing to properly file his claim. Ignoring this discrepancy, this allegation does not bring Appellant within the "filing in the wrong forum" portion of the equitable tolling doctrine. Since it is undisputed that Appellant did not complete an EEOC Intake Questionnaire, it is clear to us that the EEOC received no complaint from Appellant at any point in March, 1998. Therefore, Appellant cannot claim he filed a discrimination complaint in the wrong forum.

Finally, Appellant's fourth argument is that USPS' failure to post an EEOC notice detailing his rights tolls the

limitations period.[9]  While it is true that all employers must conspicuously post a notice to be prepared or approved by the EEOC setting forth information regarding the ADEA, 29 U.S.C. § 627, it is also true that failure to post the required notice will toll the running of the 180-day period *until* the aggrieved person seeks out an attorney *or* acquires actual knowledge of his rights under the ADEA.  Bonham v. Dresser Indus., Inc., 569 F.2d 187, 193 (3d Cir. 1977).  Here, Appellant's decision to go to the EEOC office on March 5, 1998, makes clear that he was aware that he could file an age discrimination claim.  The absence of an EEOC notice did not prejudice him, and as such is no basis to toll the limitations period.

Because it is undisputed that Appellant took no action on his ADEA claim between March 31, 1998, and October 12, 2000, and because we conclude he cannot benefit from either the discovery rule or equitable tolling, the District Court properly found that his ADEA claim was time-barred.

B. Appellant's Hybrid Section 301 Claim

Appellant also claims that USPS violated the collective bargaining agreement between it and NRLCA, and that NRLCA violated a duty of fair representation owed to him.

---

[9] We note there is a dispute of fact as to whether or not the EEOC notice was in fact posted by USPS in the Monroeville office.  However, this is immaterial as either version of the facts leads us to the same legal conclusion.

"Such a hybrid action really alleges that the process of collective bargaining has broken down." United Steelworkers v. Crown Cork & Seal Co., 32 F.3d 53, 58 (3d Cir. 1994). This type of claim is subject to a six-month statute of limitations period. DelCostello, 462 U.S. at 172. With regard to a section 301 claim, the limitations period commences "when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation." Vadino v. A. Valey Eng'rs., 903 F.2d 253, 260 (3d Cir. 1990). The limitations period for a fair representation claim begins to run when the plaintiff knows or reasonably should know of the acts contributing to the union's wrongdoing in failing to adequately represent the member's interests. Miklavic v. USAir, Inc., 21 F.3d 551, 556 (3d Cir.1994). Because it is undisputed that Appellant did not file his hybrid claim within six months of his retirement,[10] Appellant has no choice but to argue that the limitations period should be tolled.

NRLCA urges us to adopt an approach where the statute of limitations period may be tolled if (1) the plaintiff is fraudulently induced to delay filing his suit, see Simmons v. Howard Univ., 157 F.3d 914, 917 (D.C. Cir. 1998), or (2) in good faith, the plaintiff attempts to exhaust the applicable grievance procedures, see Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 421-22 (10th Cir. 1990). We need not

---

[10] Again, we give Appellant the benefit of the fiction that he first gained knowledge of this alleged injury on the last date of his employment.

reach the question of tolling the statute of limitations period, however. In hybrid section 301 claims, a plaintiff "must prove that the employer breached the collective bargaining agreement in order to prevail on the breach of duty of fair representation claim against the union and vice versa." Felice v. Sever, 985 F.2d 1221, 1226 (3d Cir. 1993). The Supreme Court instructs that, where a collective bargaining agreement establishes a grievance procedure, an employee must at least attempt to exhaust such a process. Vaca v. Sipes, 386 U.S. 171, 185 (1967). An employer cannot be held liable for breach of a collective bargaining agreement unless it can be shown that the employee unsuccessfully sought relief through the union grievance procedure. Id. It is undisputed that Article 15 of the collective bargaining agreement between USPS and NRLCA establishes a grievance procedure. Therefore, the question before us is whether Appellant diligently attempted to utilize the established grievance process.

As the District Court noted, Appellant admitted that he did not file a grievance concerning his March 10, 1998, Notice of Intent to Terminate. Joint Appendix at 570. At most, Appellant claims to have initiated the "Step 1 Grievance Procedure" by contacting his union steward and requesting that she accompany him to discuss his grievance with his immediate supervisor. Nowhere does he argue that he declared any intent to grieve or that he signed a Joint Step 1

21

Grievance Form.[11] By the terms of the collective bargaining agreement, a grievance commences when an employee meets with his supervisor and declares that he has a grievance. From the record, it is apparent that Appellant and his union steward met with his supervisors on March 10, 1998, where he was given the choice of retiring so he would not lose his pension, or being terminated for his several safety violations. He chose the former option, and chose not to pursue the grievance process further. As such, Appellant must argue that exhaustion of the grievance process was somehow excused.

Appellant notes that the Supreme Court has advanced at least three exceptions to the requirement of total exhaustion of grievance remedies under a collective bargaining agreement: (1) where the employer's conduct repudiates contractual remedies; (2) where use of grievance procedures would be futile; and (3) where the union breaches its duty by wrongfully refusing to process a grievance. Clayton v. Int'l Union, U.A.W., 451 U.S. 679, 689 (1981); see also Vaca, 386 U.S. at 185. Appellant attempts to seek refuge in these exceptions. However, other than accusations substantiated with nothing more than conclusory allegations of fraud and collusion, he presents no evidence to establish that any one of these exceptions is applicable. To survive summary judgment, a party must present more than just "bare assertions, conclusory allegations or suspicions" to show the existence of a genuine issue. Celotex Corp., 477 U.S. at 325.

---

[11] Indeed, Appellant concedes in his brief that the grievance was ended at the meeting.

22

Appellant does not explain why his failure to press his grievance further (by having the Step 1 Grievance Form annotated) was caused by malfeasance on the part of USPS, nor does he supply evidence demonstrating that use of the grievance procedure would have been futile or that NRLCA acted against his interests. Therefore, we cannot excuse his failure to exhaust the grievance process before bringing his hybrid section 301 claim.

As it is undisputed that Appellant did not attempt to first resolve the dispute via the grievance process, he cannot sue USPS for any alleged breach of the collective bargaining agreement, and consequently cannot sue NRLCA for any alleged breach of the duty of fair representation. See Felice, 985 F.2d at 1226. Therefore, the District Court properly dismissed his hybrid section 301 claim in its entirety.

For these reasons, we affirm the decision of the District Court.

———————————

23