

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-21-2009

# Tony McCloud v. United Parcel Servic

Precedential or Non-Precedential: Non-Precedential

Docket No. 08-1700

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Tony McCloud v. United Parcel Servic" (2009). *2009 Decisions.* Paper 1343.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1343

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 08-1700
_____

TONY RANDALL MCCLOUD,
                                        Appellant
v.

UNITED PARCEL SERVICE, INC.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 07-CV-00344)
District Judge:  Honorable J. Curtis Joyner

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 13, 2009

Before: RENDELL, FUENTES and ALDISERT, <u>Circuit</u> <u>Judges</u>

(filed: May 21, 2009 )

_____

OPINION
_____

PER CURIAM

    Tony McCloud appeals from an order of the United States District Court for the

Eastern District of Pennsylvania, which granted the defendant's summary judgment

motion and dismissed all of McCloud's claims in his employment discrimination lawsuit.

We will affirm the District Court's judgment.

McCloud, who is African-American, was an employee at United Parcel Service (UPS). On Saturday, September 20, 2003, McCloud gave an employee some orange cones to place on a ramp at a UPS facility. At the end of the shift, McCloud noticed writing on one of the cones that said "Tony Mc sucks dick, asshole," and in another area of the cone, "Neg." McCloud reported the incident to his immediate supervisor, who told him to bring it to the attention of Mr. Fiorentino, who was in charge of the entire facility. Fiorentino was out, but talked to McCloud on Tuesday, September 23 when he returned to work. McCloud claims that Fiorentino tried to convince him not to pursue the complaint, but, nevertheless, an investigation was instigated. Over the following week, all eighteen employees who were known to be working on the ramp were interviewed and were asked to provide a writing sample. UPS sent the writing samples to an expert forensic examiner, who did not find a match between the samples and the writing on the cone. UPS also conducted pre-work meetings soon after the incident, and instructed employees that racial harassment and defacing UPS property by writing racial slurs would not be allowed.

McCloud went on medical leave beginning September 21, 2003, citing stress and related problems due to the traffic cone incident. An employee on medical leave was required to inform UPS if he was working elsewhere, so that benefits could be offset by the outside income. McCloud had previously informed Fiorentino that he had been

2

working a second job at Hertz, although he did not include this information on his disability benefits application. Fiorentino passed the information on to Barbara Gohery, an Employee Relations manager, who contacted McCloud to discuss his alleged outside employment, but he declined to do so. His benefits were suspended on November 30, 2003. Gohery sent McCloud a letter on December 15, 2003, asking him to meet to discuss his employment status. McCloud declined, but an assistant at Hertz faxed a letter on December 29, 2003 stating that McCloud was an employee but had not worked since July 2003. UPS determined that it required confirmation from a manager at Hertz, rather than an assistant, and again asked for confirmation on McCloud's status. Gohery's replacement sent McCloud a letter on January 25, 2004, stating that his employment status needed to be verified before his benefits could be reinstated. UPS then received documentation on February 5, 2004 from a City Manager at Hertz, confirming that McCloud was an active employee but that he had not worked since July 2003. UPS then reinstated McCloud's benefits, retroactive to the date they had been suspended. McCloud ultimately received twelve months of benefits, the maximum allowed, but was administratively terminated from UPS, per the terms of the Benefit Plan, when he failed to return to work before the expiration of his benefits.

McCloud filed a federal complaint, alleging that the cone incident, UPS's response to the incident, and the disruption of his benefits constituted evidence of a hostile work environment in violation of Title VII and the PHRA. McCloud also claimed that his

disability benefits were suspended in retaliation for his first complaint, and that his employment contract had been violated.[1]

The District Court found that the cone incident was not sufficiently "severe or pervasive" to constitute a hostile environment. The Court also found that there was no basis for liability on the part of UPS, because it took immediate investigatory action. As for the retaliation claim, the District Court found that McCloud had not established any causal link between his complaint about the cone incident and the suspension of his disability benefits. The District Court also noted that even if a link had been established, UPS had proffered a legitimate non-retaliatory justification for its actions. The District Court granted UPS's motion for summary judgment, and McCloud filed a timely appeal.[2]

We have jurisdiction over the appeal under 28 U.S.C. § 1291 and exercise plenary review over the District Court's decision to grant summary judgment. McGreevy v. Stoup, 413 F.3d 359, 363 (3d Cir. 2005). Summary judgment is appropriate when the

---

[1] We agree with the District Court that McCloud produced no evidence that he had an employment contract, and we will not discuss this issue further.

[2] McCloud was initially represented by counsel on appeal, but this Court granted a motion to withdraw counsel on October 6, 2008. McCloud is currently proceeding pro se. UPS argues on appeal that McCloud has waived appeal of any District Court ruling on the allegations of his complaint by failing to raise legal arguments in his opening brief. We agree that McCloud has failed to properly challenge the denial of his discrimination claims; however, for the sake of thoroughness, we will address the propriety of the District Court's judgment. We further agree with UPS that the only issue raised by McCloud in his brief, the "perjury" allegedly committed by a UPS witness, is not a proper subject of this appeal, and, in any event, the question of whether McCloud was or was not a supervisory employee (which is the subject of the alleged perjury) is irrelevant to his discrimination claims.

4

"pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A court reviewing a summary judgment motion must evaluate the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). However, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

To state a claim of discrimination based on a hostile work environment, an employee must show that (1) he suffered intentional discrimination because of the protected factor (in this case, race), (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected him, (4) the discrimination would detrimentally affect a reasonable person of the same race in that position, and (5) the existence of respondeat superior liability. Andreoli v. Gates, 482 F.3d 641, 643 (3d Cir. 2007). Even assuming, arguendo, that McCloud established the first four elements of his claim, his claim necessarily fails, because UPS is not liable for the cone incident.

An employer is liable for harassing conduct if it is "negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment." Id. at 644

5

(internal quotations and citations omitted). An employer will only be found negligent if it "knew or should have known about the harassment, but failed to take prompt and adequate remedial action." Id. (internal quotation and citation omitted). Here, UPS investigated the incident within twenty-four hours of McCloud informing his supervisor of the incident. UPS interviewed all eighteen employees who were assigned to the area where the cone was found, obtained handwriting samples from each of them, and consulted a handwriting expert to compare the samples with the writing on the cone. UPS also instructed supervisors to meet with employees to inform them that such an incident was not tolerable. Although no employee was punished because the investigation was inconclusive, the investigation and required meetings were "reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997). As UPS's remedial action was both prompt and adequate, McCloud's hostile environment claim fails.

To establish a prima facie case of retaliation, a plaintiff must show: (1) he engaged in protected activity, (2) the employer took a materially adverse action against him, and (3) there was a causal connection between the protected activity and the employer's action. LeBoon v. Lancaster Jewish Community Center Ass'n, 503 F.3d 217, 231 (3d Cir. 2007). McCloud claims that his disability benefits were suspended in retaliation for his filing a discrimination complaint with the Pennsylvania Human Relations Commission. Filing the discrimination complaint was a protected activity. One

might question whether the suspension of McCloud's disability benefits for less than three months, followed by complete reimbursement, was "materially adverse,"[3] but we will assume for the sake of argument that it was. However, we agree with the District Court that McCloud did not establish causation. The timing of the suspension of benefits (two months after the cone incident, and one month after he had filed the PHRC claim), was not particularly suggestive. As the District Court noted, there also was no evidence that the benefits personnel that suspended McCloud's benefits had any knowledge of the cone incident or the PHRC claim. Even if McCloud had established a suggestion that the suspension was based on retaliation, it appears that in fact, McCloud caused the continuation of the suspension by failing to cooperate in establishing that he had not worked at Hertz for several months. Further, even if McCloud had established a prima facie case of retaliation, we agree with the District Court that his failure to cooperate in providing information about his outside employment was a legitimate, non-retaliatory reason for UPS's suspension of the benefits. Thus, McCloud's retaliation claim fails.

For the foregoing reasons, we will affirm the District Court's judgment.

---

[3] An action is "materially adverse" if it might reasonably dissuade a reasonable worker from making or supporting a charge of discrimination. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).