NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1449
_____

ERNEST PIZIO,

Appellant

v.

HTMT GLOBAL SOLUTIONS,
formerly known as SOURCE 1 HTMT, Inc.;
MS. VARADAN
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-09-cv-01136)
District Judge:  Hon. Jose L. Linares
_____

Argued
December 18, 2013

Before:  JORDAN, VANASKIE and GREENBERG, *Circuit Judges*

(Filed: January 31, 2014)
_____

Alan J. Genitempo, Esquire   [ARGUED]
Piro, Zinna, Cifelli, Paris & Genitempo
360 Passaic Avenue
Nutley, NJ 07110-000
        *Counsel for Appellant*

Nicholas J. Fortuna, Esquire
Paula Lopez, Esquire [ARGUED]
Allyn & Fortuna
1010 Avenue of the Americas
Third  Floor
New York, NY 10018
      *Counsel for Appellee*

———————————

OPINION OF THE COURT

———————————

JORDAN, *Circuit Judge*

Ernest Pizio appeals a grant of summary judgment by the United States District Court for the District of New Jersey to HTMT Global Solutions ("HTMT") in this employment discrimination action.  For the reasons that follow, we will affirm in part and otherwise reverse and remand.

## I.      BACKGROUND[1]

Pizio was hired as a Vice President ("VP") of Business Development by HTMT, a company specializing in the outsourcing of information technology support and related services. At the time of his hiring in December 2004, he was 56 years old.  On at least two occasions, Pizio applied to be the VP of Sales for HTMT but was passed over each time: first, in favor of a 47-year-old African-American male, and second, after that gentleman left, when two younger Indian males – Ashwin Devanni and Ramesh Anand – were hired and Anand took on some supervisory responsibilities for sales.

---

[1] In accordance with our standard of review, *see infra* note 4, we set forth the facts in the light most favorable to Pizio, the non-moving party.

Throughout his tenure with HTMT, Pizio repeatedly complained to HTMT's management that he felt discriminated against because of his age. He specifically recalled a conversation with HTMT's President, M.S. Varadan, after first failing to secure the promotion to VP of Sales, in which Varadan allegedly told him that he was "too old" for the position. (Supp. App. at 28, 68.) Subsequently, on two separate occasions, Pizio sought legal advice because of what he perceived as age discrimination.

HTMT terminated Pizio's employment at the end of March 2007. Pizio then promptly retained counsel, who advised him that the deadline for filing a charge with the U.S. Equal Employment Opportunity Commission (the "EEOC") was calculated as 300 days "after an act of discrimination." (Supp. App. at 25.) Taking the termination to be the operative act of discrimination, the attorney told Pizio that the deadline would fall in January of 2008.[2]

On November 15, 2007, Pizio went to the EEOC about his termination and submitted an Intake Questionnaire. In relevant part, he set out his allegations of discrimination in answers to form questions as follows:

> 5. What happened to you that you believe was discriminatory? Include the date(s) of harm, action(s) and include the name(s) and title(s) of the persons who you believe discriminated against you. ...
> A. Date 3/31/07. Action. Terminated for not attaining sales goal. Two other people with the same title as me VP Business Development with no sales to

---

[2] The attorney identified January 18 as the date but, in fact, the deadline based on the termination was one week later, on January 25, 2008. The 300-day limitations period is longer than the 180 days set forth in Title 42 section 2000e–5(e)(1) of the U.S. Code because New Jersey, where this case arose, is considered a "deferral state." In that case, a complainant is provided 300 days to file a charge. *See, e.g.*, *Cardenas v. Massey,* 269 F.3d 251, 255 n.2 (3d Cir. 2001); s*ee also infra* note 6 and accompanying text.

> their credit were not fired – Ashwin Devnani (age mid-thirties) Ramesh Anand (age early forties). In addition, these gentlemen each had a base pay $50,000/yr higher than mine.
>
> 6. What reason(s) were given to you for the acts you consider discriminatory? By whom? Title? On 8/8/06 and two other occasions MS Varadan President told me that I was too old. He said Partha Sarkar, CEO, established a management staff in the thirties and forties.

(Supp. App. at 77-78.) Pizio checked "yes" to the question of whether he had "sought help about this situation from a union, an attorney, or any other source." (*Id*. at 79.) Notably, he checked only the box for age discrimination in response to the form question, "What is the reason (basis) for your claim of employment discrimination?" (*Id*. at 77.)[3]

On December 4, 2007, Pizio's attorney sent HTMT a letter stating that Pizio had filed a discrimination charge with the EEOC. In response, on January 16, 2008, HTMT's attorney said that she had been retained to represent HTMT "in connection with Ernie Pizio's EEOC Charge." (App. at 69.) In between Pizio's letter and HTMT's response, the EEOC issued a charge number based on Pizio's Intake Questionnaire, and an EEOC investigator, Philip Dudt, scheduled an interview with Pizio for January 15, 2008. According to Corrado Gigante, Director of the Newark Area Office of the EEOC, where Pizio had submitted his Intake Questionnaire in person, "[i]t [wa]s common practice to issue a Charge Number based on an In-Take Questionnaire." (App. at 63 (Gigante Affidavit).)

On January 14, 2008 – the day before Pizio's scheduled interview – Dudt rescheduled the interview for February 7, 2008. Why the interview was rescheduled is

---

[3] The other options on the form were discrimination based on sex, disability, national origin, color, religion, retaliation, and pregnancy.

the subject of disagreement. Pizio maintains that he was told by the EEOC that his interview needed to be rescheduled. According to Dudt's case-log, however, on January 11, Dudt "[had a] msg from Pizzio stating he [wanted] to reschedule intake interview," and then on January 14, Dudt "spoke w/ Pizio & he agreed to reschedule his intake interview for 2/7 @ 10:00 am." (App. at 70.)[4] Gigante corroborated that narrative, noting that Pizio had canceled the January interview.

The same day as the rescheduled interview, February 7, 2008 – which was after the deadline for Pizio to file a charge – the EEOC formally alleged that HTMT had taken unlawful employment actions against Pizio on the basis of age and national origin. In HTMT's March 28, 2008 "position statement," filed in response to the EEOC allegations, the company argued that Pizio had signed a release that barred any charge of discrimination. HTMT did not, however, challenge the timeliness of Pizio's filing with the EEOC. In fact, as Gigante noted in his affidavit:

> During the EEOC's investigation, HTMT Global Solutions defended Ernest Pizio's allegations on the merits of the complaint. Nothing in the EEOC file indicates that at any time HTMT Global Solutions raised issues with regard to the timeliness or effectiveness of Ernest Pizio's charge.

(App. at 64 (Gigante Affidavit).)

Following its own investigation, the EEOC issued a determination letter stating that HTMT had "subjected" Pizio "to discrimination based on his age (58) and national origin (Non-Indian)." (App. at 74-75 (the "Determination").) The EEOC then

---

[4] At Dudt's deposition four years later, he was uncertain of how or why the interview was rescheduled. Explaining that he could not recall exactly what happened, he said that, "based on my notes," Pizio was the one who rescheduled the interview. (App. at 92 (Dudt's deposition).)

unsuccessfully pursued mediation with HTMT, during which HTMT set forth several defenses to the EEOC Determination. Later, after finding "reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge," the EEOC authorized Pizio to file a lawsuit against HTMT. (App. at 84 (Notice of Right to Sue).)

Accordingly, Pizio filed suit against HTMT and Varadan in the District of New Jersey, alleging age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, and discrimination on the basis of national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, all with respect to his termination and allegations related to compensation and advancement opportunities.

HTMT eventually filed a motion for summary judgment, which the District Court granted. The Court held that Pizio's Intake Questionnaire was not sufficient to constitute a charge of discrimination under applicable law, and that Pizio had therefore "failed to exhaust his administrative remedies." (App. at 1 (District Court Opinion).) The Court noted that "[i]t is undisputed that Pizio was terminated on March 31, 2007 and that he was required to file a charge on or before January 25, 2008 … . Accordingly, the February 7, 2008 charge [issued by the EEOC] falls outside the 300-day period associated with that claim." (*Id.* at 10.) With respect to Pizio's request for equitable tolling, the Court held that no circumstances had been shown that would make tolling appropriate.

Pizio timely appealed.

6

## II.    DISCUSSION[5]

Pizio contends that the District Court erred in concluding that his Intake Questionnaire did not constitute a charge of discrimination and that he therefore failed to timely exhaust his administrative remedies.  In the alternative, he says that the Court erred in not applying equitable tolling to his case.  We agree with him only with respect to the District Court's erroneous decision that he failed to exhaust administrative remedies as to an age discrimination claim based on his termination.  The remainder of the Court's rulings are sound.

### 1.  *What Can Constitute a Charge*

Before a plaintiff may bring an action under the ADEA or Title VII, he or she must file a charge with the EEOC within 180 days of the alleged unlawful employment action.  *See* 29 U.S.C. § 626(d)(A) (ADEA); 42 U.S.C. § 2000e-5(e)(1) (Title VII).  That deadline is extended to 300 days when the complainant lives in a "deferral state," such as New Jersey.[6]  *See* 29 U.S.C. § 626(d)(B); 42 U.S.C. § 2000e–5(e)(1); *Cardenas v.*

---

[5] The District Court had jurisdiction under 28 U.S.C. § 1331.  We exercise jurisdiction pursuant to 28 U.S.C. § 1291.  We review the District Court's grant of summary judgment de novo and "view inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party." *Montanez v. Thompson*, 603 F.3d 243, 248 (3d Cir. 2010).  "Summary judgment is appropriate where the [c]ourt is satisfied 'that there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citation omitted).  A genuine dispute exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

[6] "[B]ecause New Jersey has an anti-discrimination law, a claim must be presented to the EEOC within 300 days of the alleged unlawful employment practice." *Massey*, 269 F.3d at 255 n.2 (citing 42 U.S.C. § 2000e-5(e)(1)).  The EEOC considers its 180-day

*Massey,* 269 F.3d 251, 255 n.2 (3d Cir. 2001). A plaintiff in New Jersey therefore has failed to exhaust administrative remedies under the ADEA or Title VII and is barred from bring an action under those statutes if he or she fails to file a charge with the EEOC within that 300-day time period.

The EEOC defines a "charge" as a "statement filed with the Commission by or on behalf of an aggrieved person which alleges that the named prospective defendant has engaged in or is about to engage in actions in violation of the [ADEA or Title VII]." 29 C.F.R. § 1626.3. In *Federal Express Corp. v. Holowecki*, a case involving discrimination charges under the ADEA, the Supreme Court acknowledged that the EEOC's definition of what constitutes a "charge" is hazy. 552 U.S. 389, 395 (2008). Given that lack of clarity, the Court concluded that a document can count as a charge as long as it satisfies two requirements. First, it must contain the information required by EEOC regulations, namely,

> (1)-(2) the names, addresses, and telephone numbers of the person making the charge and the charged entity; (3) a statement of facts describing the alleged discriminatory act; (4) the number of employees of the charged employer; and (5) a statement indicating whether the charging party has initiated state proceedings.

*Id.* at 396 (citing 29 C.F.R. § 1626.8(a)). Second, the document must be such that it can "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer

filing deadline to extend to 300-days when a "state or local agency enforces a law that prohibits employment discrimination on the same basis" as a federal law. *Time Limits for Filing a Charge*, U.S. EEOC, http://www.eeoc.gov/employees/timeliness.cfm (last visited Jan. 14, 2014).

and the employee." *Id.* at 402. Although the Court recognized that it was adopting a "permissive standard" that would allow a "wide range of documents" to be considered as "charges," it said that that result "is consistent with the design and purpose of the ADEA." *Id.* Formality is not essential; indeed "a charge can be a form, easy to complete, or an informal document, easy to draft." *Id.* at 403. We too have emphasized that "[t]here is no need to require ... some magic combination of words explicitly seeking agency action." *Holender v. Mut. Indus. N. Inc.*, 527 F.3d 352, 357 (3d Cir. 2008).

In this case, Pizio submitted an Intake Questionnaire within the 300-day window that contained all of the details required by EEOC regulations for a charge of age discrimination based on termination. That is not in dispute. The issue, instead, goes to the second requirement from *Holowecki*: whether the Questionnaire can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Holowecki*, 552 U.S. at 402. We believe it can.

To decide whether a filing constitutes a charge, it "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *Id.* at 402 (citing *Bihler v. Singer Co.*, 710 F.2d 96, 99 (3d Cir. 1983)). Viewed objectively, Pizio's Intake Questionnaire does make such a request, at least as to a claim of age discrimination based on his termination. The Questionnaire adequately explains the alleged discrimination he faced and notes that he had retained counsel. Unlike the

9

complainant in *Holowecki*, who supplemented her questionnaire "with a detailed six-page affidavit," 552 U.S. at 405, Pizio provided no such corroborating information, but supplementation is not always necessary. As the Questionnaire itself states, "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR § 1601.12(b) and 29 CFR § 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." (App. at 60.) Pizio's Intake Questionnaire contains the essential details and makes a sufficient request for remedial action to suffice as a charge of age discrimination as to HTMT's decision to terminate his employment.[7]

The District Court further found it problematic that HTMT had never been served with a copy of Pizio's Intake Questionnaire, aptly noting that 42 U.S.C. § 2000e-5(e)(1) requires that notice of a charge "be served" within ten days on the person against whom

_____

[7] The difficulty in deciding whether an intake questionnaire on its own should constitute a bona-fide charge is not new. Since *Holowecki*, courts have disagreed on the conditions under which a questionnaire can be considered a charge, sometimes relying on the language of the questionnaire itself. *Compare Dyson v. District of Columbia*, 710 F.3d 415, 418 (D.C. Cir. 2013) (noting that an "Intake Questionnaire is not a Charge of discrimination" when the questionnaire itself reminds the claimants that if he or she has "'not heard from an EEOC office within 30 days of mailing' the Questionnaire," it is incumbent upon the claimant to reach out to the EEOC and timely file), *with Bland v. Fairfax Cnty.*, 799 F. Supp. 2d 609, 616-17 (E.D. Va. 2011) (holding that when the intake questionnaire itself states it can be treated as a charge, that language can be "reasonably construed as a request for the agency to take remedial action to protect the Plaintiff's rights or otherwise settle a dispute between the employer and the employee"). While the questionnaire at issue here provides plainly that, if it is the "only timely written statement of allegations of employment discrimination" (App. at 60), it will be deemed a charge, an express statement like that is not a necessity for a questionnaire to be considered a charge. Again, there are no magic words. The relevant inquiry is whether the standard set in *Holowecki* has been met. It has been in this case.

10

the charge is made.  *See* 29 C.F.R. § 1601.14(a).  While that was not done here, the fault lies with the agency, not Pizio, since it is the Commission who "shall serve respondent." *Id*.  Because EEOC regulations and practices do not clearly distinguish between an intake questionnaire that can serve as a charge and one that cannot, the EEOC at times has had difficulty in discharging its service burden.  *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1318 (11th Cir. 2001).  The lesson of *Holowecki*, though, "is that both parties must bear the consequences of the EEOC's acts.  This result is 'unfortunate' but 'unavoidable.'" *Holender*, 527 F.3d at 357 (quoting *Holowecki*, 552 U.S. at 407).

In any event, even though the EEOC did not fulfill its duty to formally notify HTMT of the charge embodied in the Questionnaire, the company was well aware of it. In her initial letter to Pizio's counsel, HTMT's lawyer specifically asked that all correspondence or communications "in connection with Ernie Pizio's EEOC Charge" be directed to her.  (App. at 69.)  On this record, there can be no credible claim that HTMT was not aware of that charge.  In a related context, we have held that,

> where the employer had the opportunity to point out the plaintiff's failure to verify the charge, and thus challenge its sufficiency, at the EEOC investigation stage, but declined to do so, ... [it would be] inequitable at best [to rigidly apply the verification requirement]. At worst, it gives employers an incentive *not* to raise a plaintiff's failure to verify her charge before the EEOC, in the hope that plaintiff will not discover the "technical" error until it is too late, and that the employer will be able to secure dismissal of any subsequent federal suit on that basis. It neither furthers the verification requirement's purpose of protecting employers from having to respond to frivolous claims nor comports with the Supreme Court's Title VII guidance.

*Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 264 (3d Cir. 2006).  The same lesson applies here with respect to what can constitute a charge.  If HTMT had a question about

11

the validity of Pizio's filing as a charge, and hence about the timeliness of administrative action, it was incumbent on the company to raise that argument rather than proceeding on the merits alone.

Having said that, the Questionnaire only takes Pizio so far. It gets him within the time limit for a charge of age discrimination associated with his termination but not for a charge of discrimination based on national origin or anything else. His additional claims surfaced only in his later arguments to the EEOC and are therefore untimely for being made after the 300-day deadline.

   2. *Equitable Tolling*

"We preface our analysis of the equitable tolling doctrine with the observation that the time limitations set forth in Title VII are not jurisdictional." *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994) (citing *Hart v. J.T. Baker Chemical Co.*, 598 F.2d 829, 831 (3d Cir. 1979)). "The doctrine of equitable tolling stops a statute of limitations period from running after a claim has accrued, but should be applied 'sparingly.'" *Podobnik v. U.S. Postal Service*, 409 F.3d 584, 591 (3d Cir. 2005) (citation omitted). The plaintiff therefore bears the burden of demonstrating that he exercised reasonable diligence and that equitable tolling is appropriate under the circumstances. *Id.* at 591. We have held that there are generally three circumstances where equitable tolling would be appropriate:

> (1) [W]here the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3)

12

where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum.

*Id.* (citing *Oshiver*, 38 F.3d at 1387). We have also noted that "equitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'" *Miller v. N.J. State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1998) (alterations in original). The benefit of tolling is meant for those who have "'exercised reasonable diligence in investigating and bringing [their] claims.'" *Id.* (alteration in original) (citation omitted). In other words, "[m]ere excusable neglect is not sufficient." *Id.* (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)).

Although Pizio argues that he should be afforded the benefit of equitable tolling, the facts do not warrant that relief. Pizio was not actively misled by HTMT or anyone else; he was not in any extraordinary way prevented from asserting his rights; and he did not assert his rights in the wrong forum. Any fault for the failure to schedule an interview during the 300-day limitations period falls on Pizio's own shoulders. While he maintains that he was not the one who rescheduled his interview, there is no evidence that he did anything to keep the interview within the 300-day filing period.[8] There is also no evidence to suggest that he was in any way inhibited in some exceptional fashion from

---

[8] Pizio's version of the facts is highly suspect. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). While it is true that Dudt could not recall who had rescheduled the interview, Dudt maintained a contemporaneous record in the ordinary course of business and he has absolutely no incentive to shade the truth. Nonetheless, even taking Pizio at his word, the circumstances here are not so "extraordinary" that equitable tolling is appropriate.

13

scheduling his interview earlier or from including all of his claims in his earlier-filed Intake Questionnaire.  As the District Court noted, Pizio had retained an attorney who immediately advised Pizio that the filing deadline was imminent.  Pizio's failure to pursue his other discrimination claims within the 300-days deadline is nothing more than a consequence of neglect.

Under these circumstances, equitable tolling is not appropriate and we will therefore affirm the District Court's decision on that point.

**III.    CONCLUSION**

For the foregoing reasons, we will reverse the District Court on the question of whether Pizio had exhausted his administrative remedies as they pertain to a charge of age discrimination based on his termination, but we will affirm in all other respects.