

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-30-2006

# Buck v. Hampton Sch Dist

Precedential or Non-Precedential: Precedential

Docket No. 05-2373

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Buck v. Hampton Sch Dist" (2006). *2006 Decisions.* Paper 779.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/779

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 05-2373

———————

KATHLEEN BUCK,
Appellant

v.

THE HAMPTON TOWNSHIP SCHOOL DISTRICT;
LAWRENCE C. KORCHNAK, DR.

———————

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 04-cv-00837)
District Judge: Honorable Joy F. Conti

———————

Argued May 16, 2006

Before:  RENDELL, VAN ANTWERPEN and WEIS,
Circuit Judges.

(Filed  June 30, 2006)

———————

Steven D. Irwin
David V. Weicht     **[ARGUED]**
Leech, Tishman, Fuscaldo & Lampl
525 William Penn Place
30th Floor, Citizens Bank Building
Pittsburgh, PA 15219
    *Counsel for Appellant*

Susan T. Roberts
Frank G. Adams     **[ARGUED]**
Peacock, Keller & Ecker
70 East Beau Street
Washington, PA 15301
    *Counsel for Appellees*

---

OPINION OF THE COURT

---

RENDELL, *Circuit Judge*.

This case requires us to address, for the first time, the circumstances under which a plaintiff's employment discrimination claims should be dismissed for failure to properly verify a charge before the Equal Employment Opportunity Commission. We read Title VII and its accompanying regulations to require a plaintiff to verify her charge before an employer receives notice of, or is required to respond to, the charge. However, we conclude that the verification requirement is not jurisdictional, and, where, as here, the employer responds to the merits of the charge without raising the plaintiff's failure

2

to verify her charge before the EEOC, it has waived its right to assert that defense in later federal court proceedings. We will accordingly reverse the District Court's order dismissing plaintiff's claims.

## I.

Plaintiff Kathleen Buck worked as a secretary to the Superintendent of the Hampton School District from 1993 until October 23, 2002.[1] From 1993 until 2000, the Superintendent was Dr. Kenneth Scholtz, with whom Buck enjoyed a good working relationship. During Scholtz's tenure, Buck often received verbal and financial commendations for her job performance.

Buck was diagnosed with, and began treatment for, major depression in 1997. Her psychiatrist sent a letter to the School District informing it that she needed to take a one-month leave to seek treatment for her condition. Thereafter, Scholtz and Dr. Lawrence Korchnak, who became Superintendent of the School District in 2000, regularly granted Buck leave from work to attend doctor's appointments. Thus, the School District and Korchnak were aware of Buck's condition.

---

[1] The facts are recited as alleged in Buck's complaint. Because we are reviewing an order granting a motion to dismiss, we must accept all of Buck's allegations as true and view the facts in the light most favorable to her. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002).

Buck's work environment changed when Korchnak became Superintendent. According to Buck, Korchnak scrutinized and criticized her job performance on a daily basis, to the point that she began to feel "incompetent, stupid and worthless" and "inadequate and less of a human being." Pl.'s Compl. at 4, ¶¶ 21-22. He told her on several occasions that members of the school board wanted to "get rid of her." As a result, Buck began to lose the ability to concentrate and complete tasks that she was assigned. Her depression intensified, and she became concerned about her job security. She received her first unfavorable performance review under Korchnak's tenure and, in 2002, was denied a pay raise because of performance concerns.

Korchnak also engaged in behavior that Buck deemed inappropriate. He routinely rubbed his genitals in her presence, despite her repeated pleas for him to stop. In the spring of 2002, Korchnak asked Buck to kiss him after a dispute involving a parent of a student at the school. Buck complied in fear of losing her job.

Buck met with Korchnak, members of the school board and the School District's Title IX officer on several occasions to voice her concerns about Korchnak's harassing behavior and its impact on her job performance. She requested accommodations, in the form of changes in Korchnak's behavior, to help her perform her job appropriately, but the School District took no action. In October of 2002, Korchnak told Buck that she would be terminated if she did not resign. Buck resigned on October 28, 2002, losing her benefits and suffering a 15% penalty on her pension.

On April 16, 2003, Buck filed general and ADA intake questionnaires with the Equal Employment Opportunity Commission, alleging employment discrimination on account of her sex and disability. The EEOC's Pittsburgh Area Office scheduled an appointment for Buck to come to the office and file a charge of discrimination with a supporting affidavit. Rather than attend the meeting, Buck filed a detailed, eight-page charge of discrimination, signed by her attorney, on July 2, 2003. On July 9, 2003, the EEOC sent Korchnak and the School District a "Notice of Charge of Discrimination," with a copy of Buck's charge attached, and requested a response by July 31. The School Board and Korchnak filed a joint "Answer and Position Statement" on September 2, 2003, responding to the individual counts in Buck's charge and providing a general "response to the charge" denying that they discriminated against Buck and claiming that she "voluntarily resigned." Buck then filed a rebuttal. The EEOC chose not to pursue Buck's charge any further, and issued her a right to sue letter on March 10, 2004.

Buck filed suit against Korchnak and the School District in the United States District Court for the Western District of Pennsylvania. She alleged five counts: harassment (count I), disparate treatment (count II), failure to accommodate (count III) and retaliation (count IV), all under the federal Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, and a violation of the Pennsylvania Human Relations Act (count V). Korchnak and the School District moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6) based on Buck's failure to verify her charge with the EEOC and the Pennsylvania Human

5

Relations Commission.[2]  The District Court granted the motion with respect to Buck's federal law claims, and dismissed the remaining state law claim for lack of subject matter jurisdiction. Buck now appeals.

**II.**

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  Our jurisdiction over Buck's appeal from the District Court's final order dismissing her complaint arises under 28 U.S.C. § 1291.

We review a district court's decision granting a party's motion to dismiss *de novo*.  In reviewing a motion to dismiss, we accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff.  We may not dismiss a complaint for failure to state a claim upon which relief can be granted unless we find that the plaintiff can prove no set of facts that would entitle her to relief.  *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002).  In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint, *id.* at 560, and any "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case."  5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004).

---

[2]The defendants also moved to dismiss on several other grounds, which the District Court did not address and are not before us on appeal.

## III.

### A.

Plaintiffs bringing employment discrimination charges under the ADA must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964, as amended, at 42 U.S.C. § 2000e-5. *See* 42 U.S.C. § 12117(a). That provision requires a complainant to file a "charge" with the EEOC, and states that such "[c]harges shall be in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires." 42 U.S.C. § 2000e-5(b). Pertinent EEOC regulations state that a charge "shall be in writing and shall be verified," 42 C.F.R. § 1601.9, and define the term "verified" as "sworn to or affirmed before a notary public, designated representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury," 29 C.F.R. § 1601.3(a). EEOC regulations further authorize plaintiffs to amend their charges "to cure technical defects or omissions, including failure to verify the charge[s]," and provide that such amendments "will relate back to the date the charge was first received." 29 C.F.R. § 1601.12(b).

Applying these provisions, we have little difficulty concluding that Buck's charge was not "verified" as defined by the regulation we quote above. The record contains three documents which, if verified, might satisfy the statutory requirement: the two intake questionnaires, *see, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1321 (11th Cir. 2001)

7

(holding that a "verified intake questionnaire . . . may constitute a charge for purposes of . . . Title VII"); *Kuper v. Colonial Penn Ins. Co.*, No. 99-172, 1999 WL 317077, at \*3 (E.D. Pa. May 18, 1999) (holding that an EEOC "questionnaire signed under penalty of perjury" may satisfy "Title VII's oath or affirmation requirement"), and the formal charge itself.[3]  Each of these documents was signed by an attorney on Buck's behalf; the two intake questionnaires were signed under the following pre-printed statement: "I hereby verify that the statements contained in this complaint are true and correct to the best of my knowledge, information and belief."  However, none of the documents was signed "under penalty of perjury" as the statute and its accompanying regulations require.  Accordingly, Buck's charge does not satisfy the statute's literal "verification" requirement.[4]  *Cf. Ricciardi v. Consol. Rail Corp.*, No. 98-3420, 2000 WL 1456736, at \*3 (E.D. Pa. Sept. 29, 2000) (signed, but

---

[3]Buck did not attempt to amend her charge to include verification while it was pending before the EEOC.

[4]We note that a charge may be filed "by or on behalf of" a claimant, 42 U.S.C. § 2000e-5(b), so that, arguably, the attorney's filing of Buck's claim was permissible. However, the attorney did not "verify" the charge according to the regulatory definition.  Buck urges that her attorney's statement as to the truth and correctness of the charge, according to the best of her "knowledge, information and belief" should be deemed a satisfactory verification. Because we decide that the verification requirement was in any event waived, we need not decide this issue.

unverified intake questionnaire allegedly filed with the EEOC does not satisfy statutory "charge" requirement).

**B.**

The question, then, is what consequences flow from Buck's failure to properly verify her charge. As the District Court observed, cases construing the statutory verification requirement and associated regulations have typically held that "a private litigant cannot maintain a Title VII or ADA claim where her EEOC charge was not verified prior to the issuance of a right to sue letter," based on two reasons.

First, the plain language of the statute, which provides that a charge "*shall* be in writing under oath or affirmation," 42 U.S.C. § 2000e-5(b) (emphasis added), indicates that the verification requirement is mandatory, *see, e.g.*, *Vason v. City of Montgomery*, 240 F.3d 905, 907 (11th Cir. 2001); *Danley v. Book-of-the-Month Club, Inc.*, 921 F. Supp. 1352, 1354 (M.D. Pa. 1996); *EEOC v. Calumet Photographic, Inc.*, 687 F. Supp. 1249, 1252 (N.D. Ill. 1988) (reasoning that "[a] charge which is neither filed under oath or affirmation, nor subsequently amended to cure this defect, fails, it seems, to satisfy th[e] statutory mandate").

Second, construing the verification requirement as a prerequisite to filing suit gives effect to the purpose of the statutory verification requirement, "to protect the employer from having to respond to frivolous charges." *Balazs v. Liebenthal*, 32 F.3d 151, 157 (4th Cir. 1994). Such "protection is lost once the right to sue letter issues and the employer is served with a

9

lawsuit. At that point the employer's only choice is to defend the suit . . . ." *Id. See also Danley*, 921 F. Supp. at 1354.

In some cases, courts have denied plaintiffs the right to amend their charges to include a verification after the EEOC issues a right to sue letter. While the EEOC has adopted a regulation that authorizes amendments to cure what it describes as "technical defects or omissions," including "failure to verify the charge[s]," 29 C.F.R. § 1601.12(b), courts have reasoned that the amendment serves no purpose once the right to sue letter has issued:

> [A] reasonable construction of the EEOC's regulation[, 29 C.F.R. § 1601.12(b),] would simply allow charges to be verified and to relate back only so long as the charge is a viable one in the EEOC's files, but that where, as here, a right to sue letter has issued, a suit has been instituted and the EEOC has closed its file, there is no longer a charge pending before the EEOC which is capable of being amended. This construction of the regulation imparts certainty to the proceeding which is helpful to the parties and to the court, and at the same time it complies with the statutory requirement of verification without undermining the EEOC regulation.

*Balazs*, 32 F.3d at 157. *See also Bacon v. Allstate Ins. Co.*, No. 93 C 1701, 1995 U.S. Dist. LEXIS 8168, at *25-26 (N.D. Ill. Jun. 14, 1995).

10

We view these cases as instructive on the limited issue of whether a post-right to sue letter amendment is permissible, not as controlling on the issue before us, namely, the plaintiff's right to bring suit after an employer has received and answered an unverified charge, without raising the lack of verification, before the EEOC.[5]  We agree that the language regarding the filing of the charge and its verification is mandatory and that the policy of protecting employers from having to respond to

---

[5]The cases cited above (and relied on by the District Court) do not address this issue.  In three of those five cases, the employer did not learn of the charge pending against it until after the EEOC issued a right to sue letter; two of those cases, *Balazs* and *Danley*, explicitly considered that fact in their analysis.  *See Vason*, 240 F.3d at 906; *Balazs*, 32 F.3d at 158; *Danley*, 921 F. Supp. at 1354.  The employer in the fourth case received a general "Notice of Charge of Discrimination" while the EEOC's investigation was pending, but no copy of the charge was attached, and the notice form did not identify the claimant or the circumstances of the alleged violation.  *See Bacon*, 1995 U.S. Dist. LEXIS 8168, at *6.  To the extent that the remaining case, *Calumet Photographic*, can be read to stand for the broader proposition that Title VII's verification requirement bars later suit regardless of whether, or when, the employer received notice of the charge, *see* 687 F. Supp. at 1249-50, 1252 (speculating that plaintiff who failed to verify charge would have been barred from suing employer that received notice of charge while it was pending before the EEOC and participated in EEOC conciliation proceedings), we note that it is not binding on us and we respectfully disagree.

11

frivolous claims supports mandatory verification. However, we are presented here with a different fact pattern. In this case, the employer received a notice and copy of the charge, and filed a lengthy and detailed response on the merits, without mentioning the plaintiff's failure to verify the charge, all *before* the EEOC issued its right to sue letter. We must decide whether, under these circumstances, the plaintiff should be barred from maintaining her suit, or whether the employer, by failing to raise the issue in the agency proceedings, has waived the right to assert the plaintiff's failure to verify her charge as a bar to suit in federal court.

Although section 2000e-5(b)'s verification requirement is a statutorily required element of an EEOC charge, it is not a *jurisdictional* prerequisite for suit, as such, *i.e.*, a plaintiff's failure to satisfy the requirement does not divest a federal court of jurisdiction. *See Price v. Sw. Bell Tel. Co.*, 687 F.2d 74, 79 (5th Cir. 1982). The Supreme Court, in *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982), held that an analogous provision, Title VII's mandatory time limit for filing charges with the EEOC, is "not a jurisdictional prerequisite to filing a Title VII suit, but a requirement subject to waiver as well as tolling when equity so requires." *Id.* at 398. In so holding, it observed that "[t]he provision granting district courts jurisdiction under Title VII, 42 U.S.C. §§ 2000e-5(e) and (f), does not limit jurisdiction to those cases in which there has been a timely filing with the EEOC." *Id.* at 393. Nor does that section limit jurisdiction to cases in which the charge before the

12

EEOC has been properly verified.[6]   Like the "provision specifying the time for filing charges with the EEOC," *id.* at 394, the provision requiring such charges to be "in writing under oath or affirmation," 42 U.S.C. § 2000e-5(b), "appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the

_____

[6]Title VII's jurisdiction-granting provision, 42 U.S.C. § 2000e-5(f)(3), reads:

> Each United States district court and each United States court of a place subject to the jurisdiction of the United States shall have jurisdiction of actions brought under this subchapter.  Such an action may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.  For purposes of sections 1404 and 1406 of Title 28, the judicial district in which the respondent has his principal office shall in all cases be considered a district in which the action might have been brought.

13

district courts," *Zipes*, 455 U.S. at 394. Moreover, while not controlling, the EEOC's own regulation describes a plaintiff's failure to verify her charge as a "technical defect[] or omission[]," 29 C.F.R. § 1601.12(b), as we noted above. We conclude that the verification requirement, like the statute's time limit for filing a charge with the EEOC, should be subject to waiver "when equity so requires."[7] *Cf. Price*, 687 F.2d at 77 n.3 ("[W]e do not . . . view the verification element as jurisdictional. . . . [C]ourts should remain flexible when reviewing failures of persons unfamiliar with administrative complexities to comply with procedural rules. We should not regard such rules as rigid jurisdictional prerequisites.").

Construing the verification requirement more flexibly, to

---

[7]The Supreme Court's statement, in *Edelman v. Lynchburg College*, 535 U.S. 106 (2002), that the verification requirement "demands an oath . . . by the time the employer is obliged to respond to the charge," *id.* at 113, is not to the contrary. The Court in that case was concerned with a challenge to the validity of the EEOC's relation-back regulation, *see id.* at 109, not with the consequences of a plaintiff's failure to verify her charge under the circumstances presented here. Thus, its statement reflects the generally applicable rule; it does not address the failure to comply with that rule, or consider whether the rule is subject to waiver. As we discuss in more detail *infra*, the result that we reach here is largely informed by the *Edelman* Court's guidance as to the remedial purpose of Title VII and its suggestion that the verification and filing provisions of Title VII should be construed accordingly. *See id.* at 115.

take equitable considerations into account, comports with the broad remedial purposes of Title VII and the ADA without compromising the verification requirement's narrower objective. As noted above, the statutory verification requirement "has the . . . object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury." *Edelman v. Lynchburg Coll.*, 535 U.S. 106, 113 (2002). Thus, the verification requirement is concerned only with protecting an employer from *responding* to an unverified charge. When an employer files a response on the merits, he forgoes the protection that the requirement affords.

Moreover, the Supreme Court has explained that the verification requirement must be construed in the context of Title VII as a whole:

> [T]he verification provision is meant to provide some degree of insurance against catchpenny claims of disgruntled, but not necessarily aggrieved, employees. In requiring the oath or affirmation, however, Congress presumably did not mean to affect the nature of Title VII as "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process."

*Edelman*, 535 U.S. at 115 (quoting *EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 124 (1988)). Where possible, then, Title VII, and the verification requirement therein, should be interpreted to "ensure[] that the lay complainant . . . will not risk forfeiting his rights inadvertently." *Id. See also Zipes*, 455 U.S.

15

at 397 (quoting *Love v. Pullman Co.*, 404 U.S. 522, 527 (1972)). The rule that the School District urges us to adopt, that a plaintiff's failure to verify her charge before the EEOC constitutes an absolute bar to suit, contravenes the Supreme Court's advice in this regard.

The facts of this case provide a telling example. When the School District received notice of Buck's charge and the EEOC's order demanding a response, Buck's unverified charge was attached. At that point, the School District could have responded that the charge was unverified and, as such, did not warrant a response on the merits. Presumably, if Buck was "serious enough and sure enough to support [her claims] by oath subject to liability for perjury," *Edelman*, 535 U.S. at 113, she could then have amended her charge to include a verification pursuant to 42 C.F.R. § 1601.12(b). If, on the other hand, Buck declined to verify the charge even after receiving notice of the defect, a court could reasonably conclude that her charge was frivolous, and would be justified in dismissing any later suit. Under these circumstances, the purposes of the statute and the verification requirement would be served: Buck would not forfeit her rights inadvertently, and the School District would not be forced to respond to an unverified or frivolous charge.

Here, instead of raising Buck's failure to verify her charge as a defense before the EEOC, the School District responded to her claims on the merits. It waited until the right to sue letter had issued, and Buck's right to amend her charge had been cut off, to raise her failure to verify as a bar to further proceedings. Were we to rigidly apply the verification requirement to bar Buck under these circumstances, we would

16

deprive her of her right to sue without any assurance that the purpose for the verification requirement is met, *i.e.*, that her claim is frivolous. In a case where the employer had the opportunity to point out the plaintiff's failure to verify the charge, and thus challenge its sufficiency, at the EEOC investigation stage, but declined to do so, such a result is inequitable at best. At worst, it gives employers an incentive *not* to raise a plaintiff's failure to verify her charge before the EEOC, in the hope that plaintiff will not discover the "technical" error until it is too late, and that the employer will be able to secure dismissal of any subsequent federal suit on that basis. It neither furthers the verification requirement's purpose of protecting employers from having to respond to frivolous claims nor comports with the Supreme Court's Title VII guidance.

At oral argument, counsel for the School District contended that employers should not be required to raise the verification defense before the EEOC because, in some instances, they receive a notice that an EEOC charge has been filed against them, but do not receive a copy of the charge itself. *See, e.g.*, *Bacon*, 1995 U.S. Dist. LEXIS 8168, at *6 (employer received "Notice of Charge of Discrimination" identifying date, place and basis for charge of discrimination, but not copy of charge or information identifying claimant or circumstances of alleged violations, before right to sue letter issued). In such cases, the School District argued, employers do not have sufficient information to determine whether the charge was properly verified or not. However, the rule we adopt is flexible enough to take such facts into account. Our decision in this case is premised on the fact that the School District had adequate

17

information, *i.e.*, a copy of the detailed but unverified charge, on which to raise the issue before the EEOC.

Under the circumstances of this case, the School District's motion to dismiss on the basis of Buck's failure to verify her charge seems like "an afterthought, brought forward at the last possible moment" to preclude "consideration of the merits"; it can prevail "only from technical compulsion irrespective of considerations of practical justice." *United States v. L.A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 36 (1952). Given our determination that the verification requirement is not an inflexible bar to suit, but a statutory requirement of the initial charge, with non-compliance amenable to equitable considerations, we cannot countenance this result. Accordingly, we hold that where, as here, an employer has actual notice of a discrimination charge and chooses to respond to the merits of the claim before the EEOC without asserting lack of verification as a defense it waives its right to secure dismissal of the federal court proceedings on that basis.

## C.

Finally, we note that we expect the cases in which this rule applies to be few and far between. We understand that, generally speaking, "the EEOC looks out for the employer's interest by refusing to call for any response to an otherwise sufficient complaint until the verification has been supplied." *Edelman*, 535 U.S. at 115. In a brief as *amicus curiae* before the Supreme Court, the EEOC asserted that its "general practice" is "to prepare a formal charge of discrimination for the complainant to review and to verify, once the allegations have

18

been clarified." *Id.* at 115 n.9 (citing Brief for United States et al. as *Amici Curiae* 24). Thus, in the ordinary case, the "complainant must submit a verified charge before the agency will require a response from the employer." *Id.* (citation omitted). This reinforces our view that equitable considerations will apply to excuse the plaintiff's failure to verify her EEOC charge only in the most unusual cases.

## IV.

As noted above, the District Court dismissed Buck's state law claim for lack of subject matter jurisdiction in light of its dismissal of the federal law claims pending in the suit. Because we conclude that the federal law claims were improperly dismissed, we will also reverse the District Court's order dismissing Buck's state law claim.

## V.

For the foregoing reasons, we will reverse the District Court's order dismissing Buck's suit and remand for further proceedings consistent with our opinion.