**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1339
_____

D.M., a minor by and through her parent and natural guardian; RAVONNIA RAY,
Appellant

v.

PHILADELPHIA HOUSING AUTHORITY; JOHN CASSIDY
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. No. 2:13-cv-05284)
District Judge: Hon. Stewart Dalzell
_____

Submitted Under Third Circuit LAR 34.1(a)
June 4, 2015
_____

Before: FISHER, JORDAN, and SHWARTZ, Circuit Judges.

(Filed: June 4, 2015)

_____

OPINION*
_____

SHWARTZ, Circuit Judge.

D.M., a minor ("Plaintiff"), by and through her mother, Ravonnia Ray , appeals

---

* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

the dismissal of her substantive due process claim against the Philadelphia Housing Authority (the "PHA") for D.M.'s exposure to lead point that occurred while she and Ray lived in Section 8 housing.[1]  We will affirm.

I[2]

Sometime before June 1, 2006, the PHA entered into a Housing Assistance Payment ("HAP") contract with John Cassidy, the owner and landlord of an apartment building in Philadelphia, Pennsylvania (the "Property"), pursuant to the Federal Housing Choice Voucher Program under Section 8 of the United States Housing Act, 42 U.S.C. § 1437, et seq. (the "Section 8 Program").  Cassidy "operated, managed, maintained, [and] controlled" the Property.  App. 32A.

On June 1, 2006, Ray entered into a two-year lease agreement for the Property with Cassidy.  The PHA approved Ray's lease for inclusion in the Section 8 Program and, in accordance with the HAP contract, paid Cassidy $501 per month in subsidies on Ray's behalf.[3]

On June 1, 2008, Ray renewed her lease, which the PHA again approved for

---

[1] Although Ray is listed as an Appellant in the Opening Brief, it appears that she is involved in this case only to the extent that D.M.'s claims are brought by and through Ray.  We will therefore refer to the appealing party in the singular.

[2] The facts as described herein are drawn from Plaintiff's Second Amended Complaint (the "Complaint"), the allegations of which we accept as true in accordance with our standard for motions under Fed. R. Civ. P. 12(b)(6).  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

[3] Under the Section 8 Program, tenants pay rent "based on their income and ability to pay.  The PHA then makes 'housing assistance payments' to private landlords" that equals "the difference between the [tenant's] contribution and a 'contract rent' agreed upon by the landlord and the PHA."  Truesdell v. Phila. Hous. Auth., 290 F.3d 159, 161 (3d Cir. 2002).

inclusion in the Section 8 Program. The lease renewal included a "Lead-Based Paint Disclosure Addendum" that was binding on Cassidy. App. 47A. In March 2009, the PHA inspected the Property and discovered several violations of the Section 8 Program's Housing Quality Standards ("HQS"), including uncovered electrical outlets, broken windows, and inoperable range burners. The PHA re-inspected the Property three times in April and May 2009, and reported that Cassidy failed to address the HQS violations. None of the PHA's inspection reports identified lead paint-related hazards in the Property.

On June 25, 2009, D.M. underwent a blood test that revealed "dangerously elevated levels of lead." App. 48A. Ray sent D.M.'s blood test results to the Philadelphia Department of Health (the "DOH"), which inspected the Property and found lead-based paint on more than eighty surfaces. The DOH ordered Cassidy to eliminate the lead-based paint, but he failed to do so. D.M. and Ray eventually moved out of the Property.

Plaintiff filed a five-count Complaint against Cassidy and the PHA in connection with D.M.'s lead paint exposure. The District Court granted the PHA's motion to dismiss under Fed. R. Civ. P. 12(b)(6), holding in pertinent part that Plaintiff's 42 U.S.C. § 1983 state-created danger claim against the PHA failed to allege that the PHA's approval of the Property for inclusion in its Section 8 Program was a "fairly direct" cause of D.M.'s injuries. App. 24A. Plaintiff appeals.[4]

---

[4] The District Court dismissed all of Plaintiff's claims against the PHA, but Plaintiff only appeals its dismissal of her state-created danger claim (Count IV).

II[5]

We review the District Court's dismissal de novo and apply the same standard as the District Court. See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we accept all facts alleged in the Complaint as true, construe them in the light most favorable to Plaintiff,

_____

[5] The District Court had jurisdiction under 28 U.S.C. § 1331. When Plaintiff filed her appeal, the claims against Cassidy were still pending in the District Court. As a result, the dismissal order was not a final order under 28 U.S.C. § 1291. To address this concern, Plaintiff announced she would withdraw and abandon the claims against Cassidy. This approach generally operates to cure the jurisdictional defect. See, e.g., Tiernan v. Devoe, 923 F.2d 1024, 1031 (3d Cir. 1991) (finding jurisdictional "defect . . . cured" where "[s]everal months after" filing their appeal, the "plaintiffs renounced, through letter briefs, any intention to take further action against the Devoe Defendants").
   The PHA asserts that because D.M. is a minor, her claims cannot be dismissed without court approval and thus the renouncement alone is insufficient to cure the defect. For this assertion, the PHA relies on Rule 2039(a) of the Pennsylvania Rules of Civil Procedure, which provides that "[n]o action to which a minor is a party shall be compromised, settled or discontinued except after approval by the court pursuant to a petition presented by the guardian of the minor." Pa. R. Civ. P. 2039(a). The PHA, however, provides no authority that this rule applies to federal proceedings or that Plaintiff's voluntary abandonment of the claims against a co-defendant runs afoul of it or impacts the finality of the dismissal order.
   In any event, Plaintiff did seek court approval to dismiss the claims against Cassidy. Plaintiff filed a motion to voluntarily dismiss that explained that it was in the minor Plaintiff's best interest to voluntarily dismiss the Complaint against Cassidy so that she could proceed with this appeal. Instead of granting the motion, the District Court issued an Order closing the case and stating simply that Plaintiff "may dismiss an action without prejudice and without a court order by filing a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Order, McField v. Cassidy, No. 2:13-cv-05284-SD (E.D. Pa. Mar. 5, 2014), ECF 24. While Plaintiff did not file such a notice in the District Court, she filed notice with this Court that she was withdrawing and abandoning the claims against Cassidy. Berke v. Bloch, 242 F.3d 131, 135 (3d Cir. 2001) (a dismissal without prejudice becomes appealable when "the party seeking relief renounces any intention to reinstate litigation"). Thus, while Rule 2039(a) does not apply, the goal of the rule of seeking court approval to dismiss a minor's lawsuit, which is also embodied in E.D. Pa. L. Civ. R. 41.2(a) and which also addresses suits by minors, has been fulfilled, and we have jurisdiction.

id., and determine whether the Complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[6]

## III

Plaintiff alleges that the PHA violated her due process rights by "exercis[ing its] authority in a manner" that made her "more vulnerable to danger" from lead-based paint in the Property. App. 76A. "[T]he Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 196 (1989). A state actor, however, "may be held liable under the 'state-created danger' doctrine for creating a danger to an individual in certain circumstances." Henry v. City of Erie, 728 F.3d 275, 281 (3d Cir. 2013) (citing Morrow v. Balaski, 719 F.3d 160, 176 (3d Cir. 2013) (en banc)). A state-created danger claim has four elements:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the

---

[6] We consider the pleading, any "document integral to or explicitly relied upon" by the plaintiff in framing the pleading, Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (internal quotation marks omitted), any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993), "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record," Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).

plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. at 282. "To fulfill the 'fairly direct' requirement of the state-created danger claim, the plaintiff must plausibly allege that state officials' actions precipitated or were the catalyst for the harm for which the plaintiff brings suit." Id. at 285 (internal quotation marks omitted). "Precipitate, in turn, means to cause to happen or come to a crisis suddenly, unexpectedly, or too soon." Id. (internal quotation marks omitted). Thus, for purposes of the fairly direct requirement, it "is insufficient to plead that state officials' actions took place somewhere along the causal chain that ultimately led to the plaintiff's harm." Id. (dismissing § 1983 state-created danger claim for the plaintiffs' fire-related injuries incurred while living in Section 8 housing because the "defendants' approval and subsidization of the apartment did not lead 'fairly directly' to the fire that claimed the [plaintiffs'] lives").

Plaintiff failed to plausibly allege that the PHA precipitated, caused, or was the catalyst for her harm. Plaintiff alleges that the PHA "failed to discover" the lead paint in its March 2009 annual inspection, App. 53A, and "rendered plaintiff[] more vulnerable to danger than had [it] not acted at all" by: (1) including the Property in the Section 8 program despite numerous HQS violations; (2) making repeated HAP payments to Cassidy despite the HQS violations; and (3) "[r]equiring" that Plaintiff "remain" at the Property despite the "life-threatening violations of HQS" and lead paint hazards. App.

76A.  However, Plaintiff does not allege that the PHA introduced lead paint to the Property or was responsible for its presence there.[7]  See Henry, 728 F.3d at 285 (finding no "fairly direct" causation where the plaintiffs "did not allege that [municipal] defendants caused the fire," "increased the apartment's susceptibility to fire," or "failed to install a smoke detector and a fire escape").  Nor does Plaintiff allege that the PHA increased the quantity of lead paint in the Property or "did anything to hinder [Cassidy] from bringing [the Property] into compliance" with HQS.  Id. at 285.  While the PHA subsidized the Property and was allegedly "aware of the dangers that [Plaintiff] faced . . . , it played no part in their creation, nor did it do anything to render [Plaintiff] any more vulnerable to them."  DeShaney, 489 U.S. at 201.  In short, Plaintiff's allegations fail to show "that [the PHA] created the danger" Plaintiff faced while living in the Property.  Henry, 728 F.3d at 286.[8]

IV

For the foregoing reasons, we will affirm.

---

[7] Plaintiff concedes that the lead paint was present when Ray and D.M. moved into the Property.

[8] Plaintiff's attempts to distinguish Henry are unpersuasive.  In Henry, the plaintiffs alleged that Erie, Pennsylvania's housing authority caused their injury by allowing them to reside in a location without smoke detectors or fire alarms.  728 F.3d at 285.  In this case, Plaintiff alleges that the PHA wrongly permitted Ray and D.M. to reside in a location in which lead paint was present.  Henry rejected this as a basis for liability because the Erie housing authority's actions were not the fairly direct cause of the injury.  The cause of the Henry injury was the fire and the alleged cause of D.M.'s injury was the lead paint placed there by the landlord.  Thus, Henry is indistinguishable.